HENRY W. UNGER and GEORGE H. MERKEL, as Surviving Executors, etc., of BENNO LOEWY, Deceased, Respondents, *v.* ISABELLA LOEWY and Others, Appellants, Respondents, Impleaded with LELAND STANFORD JUNIOR UNIVERSITY and FRANCIS P. GARVAN, as Alien Property Custodian, Defendants, and THE PEOPLE OF THE STATE OF NEW YORK, Respondent.

First Department, July 14, 1922.

Wills — construction — colleges or universities are within Decedent Estate Law, § 17, prohibiting devise or bequest of more than one-half of estate to charitable, literary or scientific association or corporation, where husband or wife is living — bequest of library and of residuary estate as endowment to Cornell University if legatee would enter into contract to maintain library — substantial failure of endowment fund by force of Decedent Estate Law, § 17, defeats entire bequest.

Colleges or universities are educational, scientific and charitable, within the meaning of section 17 of the Decedent Estate Law, which provides that no person having a wife living shall by will devise or bequeath " to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise, more than one-half part of his * * *

estate, after the payment of his  *  *  *  debts, and such devise or bequest shall be valid to the extent of one-half, and no more."

Accordingly, a will bequeathing to Cornell University a library and the residuary estate which was the entire remainder of the testator's property, as an endowment fund for the maintenance of the library after the widow had received the life use of the residuary estate, is valid only to the extent of one-half, and as the entire property of the testator was of the value of about $200,000 and the library was of the value of about $65,000, the endowment fund was decreased by virtue of said section of the Decedent Estate Law from $135,000 to $35,000.

But the entire bequest fails for the reason that under the terms of the will it is plainly evident that it was the intention of the testator that the endowment fund, which was created by him for the purpose of maintaining and increasing the library, was a material factor in the bequest and the failure of a substantial part thereof was so material as to render it unlikely that the bequest would have been made had such failure been contemplated.

SEPARATE appeals by defendants Isabella Loewy, Cornell University, Johns Hopkins University, Ida Goldberger and Max Dombrowsky from different parts of a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 28th day of December, 1921, upon the decision of the court rendered after a trial at the New York Special Term.

*Lind & Pfeiffer* [*Alfred D. Lind* of counsel; *Leonard Klein* with him on the brief], for the defendant Isabella Loewy.

*Sackett, Chapman, Brown & Cross* [*Stanley D. Brown* of counsel; *Henry W. Sackett* with him on the brief], for the defendant Cornell University.

*John E. Roeser*, for the defendants Ida Goldberger and Max Dombrowsky.

*Moss, Marcus & Wels* [*Isidor Wels* of counsel; *Charles A. Strauss* with him on the brief], for the respondents.

SMITH, J.:

For the purposes of this discussion it is necessary to recite the relevant provisions of the will in question:

" *Second.* I hereby divide my property and estate, real, personal and mixed, into two parts or portions — the first consists of my library of books, pamphlets, manuscripts, autographs, engravings and other illustrations. play bills, medals, coins and pictures — these together shall constitute the Benno Loewy Library, and shall, for all time, with their accessions and additions hereinafter provided for, be kept together and be always known and designated by that name and kept separate and apart from any and all other collections owned or controlled by the institution which may obtain the same.

" *Third.* The rest, residue and remainder of my property and

estate consists of life insurance, the premises No. 22 West 88th street, in the Borough of Manhattan in the City of New York, and my collection of postage, and a few revenue stamps, proofs and essays, bonds, stocks and other securities, cash in bank, furniture and other personal property — this I hereby designate as my residuary estate.

" *Fourth.* I direct my executors hereinafter named, or such as may qualify their and his successor and successors, to sell, at public or private sale, for cash or on secured credit, the premises No. 22 West 88th Street, in the Borough of Manhattan in the City of New York, and to give good and sufficient conveyance of the same, to collect my life insurance and to sell my personal property, other than that embraced, as above, in The Benno Loewy Library and to invest and from time to time reinvest the proceeds thereof, and to pay the whole of the net income to my beloved wife Isabella Loewy during her life, in lieu of dower and all other claims upon my estate.

" *Fifth.* I direct my said executors to enter into a mutual contract with the Trustees of Cornell University at Ithaca, New York, under whatever corporate name it may be known at the time, by which The Benno Loewy Library, hereinbefore described, is turned over to said corporation upon the following conditions:

" The said corporation will covenant for itself and its successors that they will, for all time, carefully care for, preserve and keep together and separate from all other collections and libraries the said The Benno Loewy Library; that it shall, for all time, be known and distinguished by that name, that nothing therein contained or which may at any time be required out of the income of my residuary estate, shall ever be sold, exchanged, lent, exhibited or consulted, except in the building in which said ' The Benno Loewy Library ' is housed, that said corporation will, at its own expense, provide the necessary shelves and cases for the proper care and exhibition of the same in a suitable building, pay the salaries of the necessary librarians, custodians and other employees and that it will invest my entire residuary estate and keep the same invested in such approved securities in which guardians and trustees under the laws of the State of its incorporation are permitted to invest funds and to expend the whole income in the purchase, first of books and other literary material relating to the State and Shakespeariana (but not costumes), secondly, to books and other literary material relating to free masonry in all languages, including Masonic Medals, third to law books and especially works of International and Constitutional Law and comparative jurisprudence and the continuation of the several series of reports, to keep up the membership in the various societies of which I am a member,

which publish proceedings or other volumes such as The Selden Society, American Historical Association, New York Historical Society, Lodge Quatuor Coronati, Lodge of Research, Verein Deutscher Freimaurer &c., and the surplus to continue and extend my said library and collections on the lines pursued by me, but no part of such income shall be used to pay rent, storage, salaries or other expenses of maintenance. Said agreement shall further provide that upon the death of my said wife, Isabella Loewy, the entire, rest, residue and remainder of my said estate, shall be turned over to said corporation as a personal trust fund to be invested, held, used and employed solely and exclusively for the uses hereinbefore specified.

" Should the corporation of Cornell University be unwilling to enter into the agreement hereinbefore specified, then my said executors, are directed to enter into such agreement with the corporation owning and controlling Johns Hopkins University situated at or near Baltimore, Maryland, and if this corporation also refuses to enter into such contract, then I direct my Executors to enter into such contract with the corporation owning and controlling Leland Stanford Junior University in California, by whatever name it may be known, and if all three of said corporations refuse to enter into such contract, then I direct my said executors to enter into such contract with some other educational institution having a permanent corporate existence and which is exclusively unsectarian and not governed by, or controlled by any religion or denomination of any kind whatever. It is my wish that neither Columbia University in the City of New York, Harvard University at Cambridge, Massachusetts, nor Yale University at New Haven, Connecticut, shall under any circumstances, become beneficiaries under this, my last Will and Testament. ' The creation and perpetuation of The Benno Loewy Library has been the main effort of my life, and for it I have made many sacrifices, and my wife Isabella Loewy has approved of my plan and expressed her satisfaction with the provisions hereby made for her, and it is my will, and I hereby direct that if she, or any one in her interest or for her, should, by contest of this Will or by any action for the construction thereof by whomsoever brought (which includes each of my executors and every successor of them or any of them) seek to destroy or impair or evade this purpose or any part thereof, then and in any such event or effort, I do hereby give, bequeath and devise to my said wife, Isabella Loewy, her right of dower in and to the said premises 22 West 88th Street in the Borough of Manhattan in the City of New York, and it is my Will and I direct that she shall neither, directly or indirectly, have or receive any other or further part of or share in my said estate. And I do

hereby give, devise and bequeath all my property and estate, real, personal and mixed, to my said executors hereinafter named, or to such as may qualify as such, in trust nevertheless for the uses, intents and purposes hereinbefore specified ' and I direct that none of them shall be required to give any bond as such executors and trustees, or in either capacity; and I do hereby give and grant unto my said executors and trustees the same full power and authority to sell, at public or private sale, for cash or on secured credit, the whole of the real property and estate of which I may die seized and possessed to the same full extent as I might or could sell the same, if living and personally acting.

" *Sixth.* If my said wife, Isabella Loewy, should survive me and consent to the probate of this my last Will and Testament, I do hereby authorize and direct my said executors, until the income received from the investments of my residuary estate shall equal at least three thousand dollars per year, to pay to my wife the sum of Fifty dollars per week out of the principal thereof, and to that end, to sell such securities as may be necessary to provide funds therefor."

The said will was admitted to probate on. the 12th day of December, 1919. The executors qualified and have brought this action to construe the will. The widow of Benno Loewy claimed upon the trial, and here claims, *first*, that the will in question comes within the condemnation of section 17 of the Decedent Estate Law, which provides that no person having a wife living shall by will devise or bequeath " to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise, more than one-half part of his * * * estate, after the payment of his * * * debts, and such devise or bequest shall be valid to the extent of one-half, and no more." And, also, inasmuch as under that law almost the entire endowment fund provided for the keeping up of this library has failed, that the main purpose of the will is destroyed and that the entire provision as to the bequest to Cornell University and alternatively to other colleges, should be declared null and void. This also is the claim made by Ida Goldberger and Max Dombrowsky, who have an interest in the estate as to which the decedent died intestate.

The contention of Cornell University and of the Johns Hopkins University, as legatees under the same provision of the will, is that section 17 of the Decedent Estate Law does not apply to a college or university, and even if it does so apply, that the legacy is good as to one-half of the estate.

We agree with the learned justice at Special Term (116 Misc. Rep. 628) that section 17 of the Decedent Estate Law contemplates

a legacy to a college or university. A college or university is educational, scientific and charitable. By common knowledge the tuition fees paid in a university are a small part only of the expenses of the university. (*Matter of Moses,* 138 App. Div. 525; *Mount Hermon Boys' School* v. *Gill,* 145 Mass. 139; *Detroit Home & Day School* v. *Detroit,* 76 Mich. 521; *Matter of MacDowell,* 217 N. Y. 454; *Dexter* v. *Harvard College,* 176 Mass. 192; *Perin* v. *Carey,* 24 How. [U. S.] 465, 506; *Butterworth* v. *Keeler,* 219 N. Y. 446; *Parks* v. *Northwestern University,* 218 Ill. 381; *American Academy of Arts & Sciences* v. *Harvard College,* 12 Gray, 582. See, also, *Amherst College* v. *Ritch,* 151 N. Y. 282.) Neither in the *Amherst* case, nor in *Matter of Morgan* (56 Misc. Rep. 235; affd., 127 App. Div. 945, and in the Court of Appeals, 194 N. Y. 477) was the question necessarily before the court. In the Court of Appeals the *Morgan* case was affirmed upon the express ground that the legacy did not exceed one-half of the estate.

It is not contended here that the forfeiture declared in the will to any one who should contest the will by an action for construction thereof forfeits the. right of the widow to make this contention. It is impossible that a statute made for the benefit of a widow and next of kin could be avoidable by any such provision in a will.

A more interesting question arises under the contention of the widow and heirs at law that this whole legacy fails by reason of the fact that the endowment in large part has failed under section 17 of the Decedent Estate Law. The property left by Loewy amounted in value approximately to $200,000. The library, Shakespeariana, Masonic literature and other parts of what is designated in the will as the testator's library, amounted in value approximately to about $65,000. That would leave only about $35,000, instead of $135,000, which would pass to the endowment fund to keep up this library. That this is a material factor in this will would appear from the fact alone that Cornell University has not accepted the gift of the library under the construction of the will given by the Special Term, and such acceptance is apparently withheld for no other discernible reason than to ascertain whether the endowment of $135,000 provided for in the will of the testator shall accompany the gift of the library for the purpose of purchasing books and otherwise maintaining and supplementing the gift of the library itself. Cornell University must provide shelter for the library and the librarian. The library must be kept in a separate apartment. Cornell University is required. to continue subscriptions to certain periodicals. But in the contract to be made by Cornell University which is made a condition of the gift to the university, there is no provision that Cornell should

buy additional books and keep up the library, and it would seem almost incredible that the testator could have contemplated the establishment of this peculiar library which should bear his name if the endowment which he provided therefor should substantially fail by reason of the application of the statute. That such was in the mind of the testator was evident by his recital that his wife had consented to that disposition of the property. But the evidence in the case by the wife herself is that she never did consent and does not now consent either to this gift or to the endowment attempted to be provided therefor. With the substantial failure of this endowment it would seem that the purpose of the testator in making the gift were so far defeated as to entirely defeat the legacy of the library itself to Cornell University. If Cornell University should refuse to accept the library without this endowment, and to make the contract which is the condition of the gift, the library was to be given, first, to Johns Hopkins University, and if both Cornell University and Johns Hopkins University should refuse to accept the gift and enter into the contract by which the gift is conditioned, it was to be given to the Leland Stanford Junior University in California under the same condition. If these three universities should refuse to accept the gift with the condition attached, it was to be given to any other educational institution which is unsectarian, with certain exceptions and upon the same conditions. This indefinite provision would seem further to indicate a doubt in the mind of the testator that either of these three universities would accept the library, even with the endowment, which he himself contemplated of about $135,000, and would seem to emphasize the fact that the failure of the endowment to the extent of $100,000 was the failure of a material consideration in the mind of the testator which can well be construed as a subversion of his purpose in the giving of the library to these universities.

Upon consideration of all the facts shown upon the record, we are of opinion that the failure of a substantial part of this endowment fund was so far material to the bequest as to render it unlikely that the bequest would have been made had such failure been contemplated, and, therefore, under well-settled rules of construction of wills, the legacy of the library to these institutions was void.

The judgment should, therefore, be reversed, with costs, and a final judgment directed in accordance with this opinion.

CLARKE, P. J., LAUGHLIN, DOWLING and PAGE, JJ., concur.

Judgment reversed, with costs, and final judgment directed in accordance with opinion. Settle order on notice.