In the Matter of the Estate of MARY McARDLE, Deceased.

Surrogate's Court, Bronx County, June 3, 1933.

*Hill, Lockwood & Redfield* [*M. A. Willment* of counsel], for the petitioner.

*Kadel, Van Kirk & Trencher* [*J. Philip Van Kirk* of counsel], for the distributees.

HENDERSON, S. The testatrix died on June 7, 1932, and her executor requests, in the form of questions, a construction of her will which consists of two holographic instruments and reads as follows:

*" June* 29 /28

" This is my last will and testament

" I want to leave the half of my Estate to Charity and divided as follows. I want to leave to St. Columbus Church west 25 St. near (9) Ave. ($250) two hundred & fifty dollars for a Scholarship in my name

" I want a Perpetual trust fund created and the half of the money I have in the Banks in my own name and the half of the money in Guaranteed Mortgage invested with Lawyers title & Guarantee Co 188 Montague Co Brooklyn and the half of the French Bond and the half of my interest of thirty thousand ($30,000) dollars in 493 & 495 E 142 St along with the rent of 495 E 142 St at ($110) one hundred & ten dollars a month since May 21 /1924 all put in a trust fund for the benefit of the worthy Poor children & old People of Cullyhanna Parish Co Armagh Ireland and the Interest sent over to the Parish Priest of Cullyhanna Co Armagh Ireland every year.

" The second half of my estate I wish a Perpetual trust fund created for my children My Son Peter is to get the interest of half of the fund and the Second half of the Interest of the fund is to be divided equally between my Son James & Thos and my daughter Loretta Meyers, understand Peter is to get as much for himself as the other 3 put together

" I wish the second half of my Estate after my childrens death to be assigned to the Church of Cullyhanna Co Armagh Ireland to be given for the benefit of the Worthy Poor Children and old people of that Parish for the said purpose every year. I wish to give Power to the Guarantee Trust Co to invest this Estate in Guaranteed Mortgages and to act as Executor of this my last will

" I want ($500) five hundred dollars sent to the Parish Priest for the Erection of a tombstone of My Mother Grave, Mrs. Margaret McMahon Formerly of Drumlogher Co Armagh Ireland. I also want ($100) one hundred dollars sent to the same Priests for Masses for My Mother and Myself. I wish My Husband to have the

insurance money of the policies in his name. If anyone tries to contest this will I ask to have them cut off with one dollar.

"It is my wish that none of my family shall benefit financially by the death of any one of the members of the family that his or her share will be assigned to worthy poor children and old people, of Cullyhanna Parish Co Armagh Ireland

"Signed  MARY McARDLE<br>
495 E 142 St New York City<br>
July 3rd /28

in presence of the following two witness

" MARY KENEHAN   386 E 139 New York<br>
  NORA JOYCE      386 E 139 New York

" Codocil attachment

" Instead of giving the Ins money to my husband as above stated in my will. I would like the Ins money on me added to the fund for my husband and family as above stated, and my husband to receive his share in the funds, interest money the same as that given to my Son James & Thomas and my Daughter Loretta Meyers. I want a family Plot of 3 or 4 graves selected by Sons and I want a headstone about $500 five hundred dollars erected. I want all funeral expenses paid before the two Perpetual funds are created. I wish to give the Guarantee Trust Company power to dispose or sell of 493 & 495 E 142 St.

" Signed · MARY McARDLE

        " witnessed by

" CHARLES B. STARK — 80 Smith Ave. South Nyack, N. Y.<br>
" J. V. O'REILLY     — 4011B Richard Ave., Bayside, L. I. N. Y."

The testatrix left her surviving a husband and four children. The executor alleges that the only property coming into its hands consists of deposits in savings banks, $25,213.18; a mortgage certificate guaranteed by the Lawyers Title and Guaranty Company for $10,000; and 22 shares of corporate stock *now* valued at $63.25. The realty mentioned in the will was owned by the decedent and her surviving husband as tenants by the entirety, and had not been occupied since May 21, 1924. There was no rent therefrom collected or collectible. There was no " French Bond " nor any insurance policy specifically payable to the decedent's estate. No other evidence has been submitted.

The values of the testamentary provisions for charitable purposes clearly aggregate more than half of the net estate at the time of her death and violate the statute (Dec. Est. Law, § 17). The decedent's distributees contest the gifts in excess of such half. From these charitable provisions and her expressed desire to leave

half of her estate to charity, it is apparent that her dominant testamentary purpose was that her estate should be appropriated for benevolent purposes to the fullest extent allowed by statute, and that she intended the natural objects of her bounty to receive as little of her estate as was legally possible. This is an instance where the presumption that every testator knows the law is supported to some extent by her declaration in the second sentence of her will which seems to disclose actual knowledge of the provisions of the above cited statute. Her mathematics, however, are not without error, or perhaps her evaluation of life estates is at fault.

The executor seeks answers to ten questions in accordance with its interpretation of the will and the pertinent statutes and canons of construction. The distributees disagree with such interpretation in many respects. The following answers are based on a construction which I find is the nearest solution that will effectuate so much of the testamentary intention as does not offend our statutes.

Q. " a. Has there been an ademption of the property mentioned in paragraph 6 hereof not found, or is the entire estate now existing in the hands of your petitioner to be divided into two parts, one of such parts being devoted to the purposes mentioned in the second paragraph of said will and the second part to the purposes mentioned in the third and fourth paragraphs? " A. Consideration of the expressed desire of the testatrix to leave half of her estate to charity followed by the " scholarship " bequest preceding the wholly charitable trust, together with her brief description, " the second half of my estate," used in the creation of the second " perpetual trust fund," convinces me that she did not intend any specific or demonstrative legacy by the language she used in creating the first " perpetual trust fund," but merely enumerated therein the property which she thought she owned and could bequeath at the time she executed the instrument. There has, therefore, been no " ademption " of the property alienated by the testatrix in her lifetime. The exact portion of this estate which may be legally allocated to charity is one-half of the balance found by deducting decedent's debts from the value of her estate at the date of her death. Out of the other half must be paid the funeral and administration expenses and legacies except those for charitable purposes. The will contains seven separate charitable items: (1) Masses in Ireland; (2) the mother's tombstone; (3) the amount expended for a family plot in excess of the reasonable expenditure for a suitable grave for the testatrix; (4) the amount, if any, by which the sum of $500 exceeds the reasonable expenditure for a suitable headstone; (5) the scholarship; (6) the wholly charitable trust consisting of one-half the net estate remaining after the payment of expenses

of administration and " all funeral expenses " — less the scholarship; and (7) the remainders of the " family " trusts consisting of the other or second half of such net estate. The value of such remainders at the date of the decedent's death is ascertained by subtracting the present value of each life estate from the second half of such net estate. The first four items are not strictly " funeral expenses " as that term is defined and limited by the statute (Surr. Ct. Act, § 314, subd. 3), but I find that the testatrix intended them to be included among " all funeral expenses," the payment of which is preferred by her direction in the codicil. They will be paid without abatement. The last three items cannot be paid in full but will be abated. The amount to be prorated among them may be ascertained by deducting the aggregate of the first four items from the exact portion legally distributable to charity. The total amount of such abatements passes as intestate property. The abatements of items (5) and (6) are presently distributable to the husband and four children who are also vested with the remainders of item (7) to the extent of the respective abatements, in the following proportions: one-third to the husband and one-sixth to each child.

Q. " b. Do the provisions of the third and fourth paragraphs of the will, contained in paragraph 7 above, unlawfully suspend the absolute power of alienation in violation of the provisions of Section 11 of the Personal Property Law and Section 42 of the Real Property Law? " A. No. The intention of the testatrix to set up four or five separate " family " trusts out of " the second half of " her estate, each for the life of its particular beneficiary with remainder for charitable purposes, is manifest from the later directions that none of her family shall benefit by the death of another and the share of one who dies shall thereupon be assigned or devoted to the specified charity. Hence, neither the power of alienation nor absolute ownership is unlawfully suspended.

Q. " c. Does the provision in the fourth paragraph of said will that the remainder after the termination of the respective life estates be assigned to the Church of Cullyhanna, County Armagh, Ireland, to be given for the benefit of worthy poor children and old people of that Parish for said purpose every year, constitute a legacy to the Church of Cullyhanna, or is a trust created in your petitioner and the income to be paid each year to said Church for the purposes mentioned? " A. It is apparent from the power expressly given to the petitioner " to invest this estate " that the testatrix intended that it serve as trustee as well as executor. Among the common, ordinary or lay definitions of " assign " we find " allot," " appor-

tion " (Webster New Int. Dict.), and also " set apart for a particular use " (Funk & Wagnalls New Stand. Dict.). There is absolutely no reason for believing that the testatrix used the word " assigned " in its special, limited or legal sense, and I find that wherever she used " assigned to " she intended that term to mean " set apart for " or " allotted to." The abated remainders of the " family " trusts, therefore, are not legacies to the designated church, but remain in the second " Perpetual trust fund " to be devoted to the specified charitable purposes under the trusteeship of the petitioner.

Q. " d. Furthermore, does the decedent's husband, Thomas McArdle, share in the benefits of said trust in the absence of any insurance payable to the estate? " A. Not if there is any insurance on decedent's life payable to him, unless he donates it to the " family " trusts. The codicillary provision for his benefit is conditioned upon the addition of the proceeds of such insurance to such trusts. If there is no insurance payable to the husband, he is entitled to receive the income from one of the trusts during his life. It is apparent that the testatrix intended to provide for him — either by insurance " in his name," which of course is his under the contract therefor, or by her will. If he retains the proceeds of any such insurance there are four " family " trusts. Otherwise there are five, under one of which he is the *cestui que trust.*

Q. " e. Do the gifts contained in the will for charitable and benevolent purposes violate the provisions of Section 17 of the Decedent Estate Law of the State of New York, and if so, which half of the estate is to be deemed invalid, and if the second half, can distribution be made prior to the termination of the life estates created? " A. Hereinbefore answered in part. Upon the death of each trust beneficiary the remainder is divided into two proportionate parts. One is then distributable as intestate property and the other falls into the secondary charitable trust.

Q. " f. Are the legacies of $500 for the erection of a tombstone over the grave of the decedent's mother, the legacy of $100 to a priest for masses, and the direction for the purchase of a family plot of three or four graves and a direction to erect a headstone thereon costing about $500, to be deemed benevolent or charitable bequests? " A. The legacy for the mother's tombstone provides for the improvement or embellishment of a burial lot and must be deemed to be for a charitable purpose as that term is used in the statutes (Dec. Est. Law, § 17; Pers. Prop. Law, § 13-a). These masses are not an integral part of the decedent's funeral services, and are for religious and charitable uses. (*Matter of Morris,* 227 N. Y. 141, 144; *Matter of Beck,* 130 Misc. 765.) The purchase of a family plot and the erection of a headstone thereon are properly

part of decedent's funeral expenses to the extent of the amount reasonable for decedent's burial and headstone. (Surr. Ct. Act, § 314, subd. 3.) The balance, if any, expended therefor pursuant to the will is deemed in law an expenditure for a charitable purpose. (Pers. Prop. Law, § 13-a; *Matter of Smallman*, 138 Misc. 889, 893.)

Q. " g. Do the directions that the sum of $500 for a tombstone over the grave of the decedent's mother be paid to the parish priest, and the further direction that the sum of $100 be sent ' to the same priest for masses ' constitute a trust in the petitioner or legacies to said priest, and to the priest of what town or district, Drumlogher or Cullyhanna? " A. The primary and imperative object of this testamentary provision was to have a tombstone erected on her mother's grave and to have masses said for her mother and herself in the locality of her mother's grave. Her purpose was not to make a personal gift to any person. These legacies are trusts in the petitioner for charitable uses. The parish priest in Ireland cannot act as trustee unless he is an American citizen. (Surr. Ct. Act, § 94.) The general purposes thereof will be most effectually and lawfully accomplished by a construction that results in the petitioner becoming trustee of all the trusts under the will. These charitable bequests will be expended as follows: The masses will be said by the parish priest of Cullyhanna, County Armagh, and he will be consulted with respect to the tombstone, although his opinion will not control the petitioner in the erection thereof. (Pers. Prop. Law, § 12, subd. 2.)

Q. " h. Does the will constitute your petitioner trustee as well as executor, and if so, may investments be made by it in legal securities other than guaranteed mortgages, and also, may participations or assignments of interest in guaranteed mortgages be purchased? " A. Yes. The trustee may invest in or purchase participation or interests in " guaranteed mortgages " similar to the investment by the testatrix therein, in addition to such investments as may be made by any testamentary trustee under the authority of our statutes, subject, however, to the exercise of care, diligence and prudence with which a trustee is always charged.

Q. " i. Is the forfeiture clause set forth in the 8th paragraph hereof valid or is it merely *in terrorem?* " A. This provision of the will is void as merely *in terrorem* without any gift over in the event of a breach. (*Matter of Arrowsmith*, 162 App. Div. 623, 628; affd., 213 N. Y. 704.)

Q. " j. Can the intention of the testatrix be ascertained and given force and effect in whole or in part? " A. In part.

Settle decree.