In the Matter of the Estate of JOHN S. BRUSH, Deceased.

Surrogate's Court, Kings County, February 15, 1935.

*Ernest F. Griffin,* for Ada M. Brush.

*White, Simms & Houston,* for Ethel Ottinger.

WINGATE, S. The verity of the ancient adage respecting the untoward results of canine malignment was never better illustrated than in the law relating to the subject of testamentary stipulations which conditions benefits upon an abstention by the legatee from contest of the will of the donor. A large proportion of the judicial utterances adjudicating the effect of such conditions refer to them as " in terrorem " provisos, but such an appellation adds nothing illuminating to a consideration of the subject, and, as the Court of Appeals has aptly observed, is " merely, a convenient phrase adopted by judges to stand in place of a reason for refusing to give effect to a valid condition." (*Hogan* v. *Curtin,* 88 N. Y. 164, 171.)

Whereas the indulgence of superlatives in judicial utterance is usually hazardous and frequently productive of untoward results, it may be said with safety that there are few subjects of testamentary interpretation, the principles concerning which are in a more nebulous and unsatisfactory state than in that which is here in question. This condition is particularly true in New York, since whereas the question has frequently arisen before the courts, the resulting determinations are in hopeless conflict and the Court of Appeals has never directly spoken the final word in settlement.

In the United States as a whole, three schools of thought prevail

on the subject, and the decisions of this State have from time to time, either by decision or dictum, indicated a preference for each of the three.

The first, in point of antiquity, though in the opinion of this court, not in honor, is that exemplified by the Supreme Court of Virginia in *Fifield* v. *Van Wyck* (94 Va. 557, 563; 27 S. E. 446), to the effect that " conditions relating to marriage and disputing a will, when annexed to bequests of personal estate, where there is no gift over upon breach of such condition, are * * * inoperative." The comparatively few jurisdictions which adhere to this doctrine do not, however, apply this rule to cases of devises of real estate. (See *Bradford* v. *Bradford*, 19 Ohio St. 546, 547; *Hogan* v. *Curtin*, 88 N. Y. 164, 173.)

" The reason of the apparent anomaly " (*Hogan* v. *Curtin*, *supra*, p. 172) has been frequently elucidated on the historical basis that the English Ecclesiastical Courts, which controlled the distribution of personalty in the early days, imported and applied the rules of the civil law in their dealings with that species of property. These were thereafter followed in equity. In respect to land, however, the common-law rules received continuous application and the courts consistently refused to override the clearly expressed wishes of a testator respecting the mode of disposition of his property.

The second school of American legal thought on the subject is mirrored in the decision of the Supreme Court of Errors of the State of Connecticut in *South Norwalk Trust Co.* v. *St. John* (92 Conn. 168, 177; 101 A. 961), which, while repudiating, as wholly factually and logically baseless, any distinction between real and personal property in determining whether or not a testator's express limitating condition on the bestowal of a benefit shall be effectuated, substitutes, in effect, the opinion of the court for the expression of testator's wish, as to the reasonableness of the condition, and holds that a testamentary limitation against a contest will be voided, if the court, in its august wisdom, concludes that the expressly limited legatee had " reasonable ground " for instituting the contest.

To this court the objection to this rule voiced by former Surrogate FOWLER (*Matter of Kathan*, 141 N. Y. Supp. 705, 710, not otherwise reported) is wholly conclusive. He says: " This leaves the whole matter to a judge, and this is wrong, ' *Optima est lex quae minimum relinquit arbitrio judicis,*' said Coke and Bacon." Either the condition imposed by the testator should be wholly validated, on the theory " that a breach of a lawful condition annexed to a legacy, either divests it, or prevents an estate therein

arising in the legatee, depending upon whether the condition is precedent or subsequent" (*Hogan* v. *Curtin*, 88 N. Y. 164, 171), and that "legacies and devises" are "acts of bounty merely. The testator was free to withhold them altogether, or subject them to conditions, whether sensible or futile. The gift is to be taken as it is made or not at all" (*Oliver* v. *Wells*, 254 N. Y. 451, 459), or the entire limitation should be wholly deleted, and the law be frankly stated to be that the immemorial criterion of testamentary interpretation does not here obtain and that in the words of Rip Van Winkle: "This one don't count." The middle course adopted in the Connecticut doctrine permits the court to write a new will for the testator, which, like too many other questions of testamentary interpretation, will depend in many instances on the activities of the particular court on the previous evening and his satisfaction with his prandial repast.

The third and final school of thought is represented by the vast preponderance of American opinion, typified by the decision of the Supreme Court of Ohio in *Bradford* v. *Bradford* (19 Ohio St. 546), which quotes and adopts (p. 548) the position of Judge Redfield in his well-known treatise on Wills: "any such condition, which is reasonable,— as one against disputing one's will surely is, as nothing can be more in conformity to good policy than to prevent litigation,— will be held binding and valid."

Other authorities to the same effect are *Donegan* v. *Wade* (70 Ala. 501, 505); *Estate of Hite* (155 Cal. 436, 446; 101 P. 443); *Estate of Kitchen* (192 Cal. 384, 389; 220 P. 301); *Sackett* v. *Mallory* (42 Mass. [1 Metc.] 355, 356); *Rudd* v. *Searles* (262 id. 490, 499; 160 N. E. 882); *Schiffer* v. *Brenton* (247 Mich. 512, 518; 226 N. W. 253); *Estate of Chambers* (322 Mo. 1086, 1103; 18 S. W. [2d] 30); *Hoit* v. *Hoit* (42 N. J. Eq. 388, 390, 391; 7 A. 856); *Bender* v. *Bateman* (33 Ohio App. 66, 69; 168 N. E. 574); *Estate of Hickman* (308 Penn. St. 230, 234; 162 A. 168); *Breithaupt* v. *Bauskett* (1 Rich. Eq. [S. C.] 465, 472); *Thompson* v. *Gaut* (82 Tenn. [14 Lea] 310, 315); *Massie* v. *Massie* (54 Tex. Civ. App. 617, 618; 118 S. W. 219); *semble accord*, *White* v. *Chellew* (108 Wash. 628, 632; 185 P. 621). This list might be considerably extended, but the great weight of authority is sufficiently demonstrated by the foregoing.

Whereas this review may present an interesting summary of the diverse conceptions of the subject entertained by the various ultimate tribunals of the several States, it would possess no more than academic interest in an opinion by a New York *nisi prius* tribunal if in spite of the absence of a determination by the Court of Appeals, decisions of other intermediate appellate courts of the State had established the rule of law to be followed. As this court

reads the six appellate decisions which have been rendered on this question, such is, however, not the case. These decisions, in chronological order are *Woodward* v. *James* (44 Hun, 95), decided by the General Term for the First Department in 1887; *Bryant* v. *Thompson* (59 id. 545), General Term, Fifth Department, 1891; *Matter of Vandevort* (62 id. 612), General Term, Fifth Department, 1892; *Matter of Arrowsmith* (162 App. Div. 623), First Department, 1914; *Matter of Kirkholder* (171 id. 153), Fourth Department, 1916, and *Unger* v. *Loewy* (202 id. 213), First Department, 1922. The *Arrowsmith* case was affirmed without opinion in 213 New York, 704, and *Unger* v. *Loewy* was reversed on other grounds in 236 New York, 73.

It is unquestionable that the language of the *Arrowsmith* opinion has been exalted to a position far beyond its deserts by reason of its affirmance without opinion by the Court of Appeals, the attitude being adopted that this act of the court of last resort placed the stamp of its approval upon the decision. Of course this view is interesting only by reason of its demonstration of the incorrect conception of those entertaining it respecting the result of such an affirmance. The limits of the approval which such action indicates have been repeatedly stated:

" Our affirmance \* \* \* without an opinion made us responsible only for the point decided, and did not make us guarantors of all of the reasons given or opinions expressed." (*Rogers* v. *Decker*, 131 N. Y. 490, 493; see, also, *People ex rel. Palmer* v. *Travis*, 223 id. 150, 156.)

" The affirmance of the Court of Appeals was without opinion. That court has repeatedly pointed out that when they affirm without opinion they are responsible only for the result and not for the reason given in the opinion in the lower court by which it arrived at the result." (*Scott & Co.* v. *Scott*, 186 App. Div. 518, 526.)

It follows that the *Arrowsmith* case, except on its precise facts, is entitled to no greater weight in this court than the decision of any other tribunal of comparable authority. Wherefore, since the situation and facts of the case at bar differ from those therein adjudicated the determinations made in all six of the appellate decisions hereinbefore noted are to be considered in attaining a result. They will be reviewed in their chronological sequence.

In *Woodward* v. *James* (44 Hun, 95) the will contained a condition that the beneficiaries should refrain from any interference with the legal rights of the executrix and trustee. The only action claimed to be within this description was activity by an infant in a proceeding for a construction of the will. It was held that

the infant would not lose its legacy, both by reason of its infancy and "that the action itself was not, in its scope and purpose, intended to defeat the known and established intention of the testator, but to obtain an adjudication as to what the intention was " (p. 100).

The will in *Bryant* v. *Thompson* (59 Hun, 545) contained a clause (p. 547) that if any beneficiary, personally or through another, instituted any proceeding to invalidate it, any provision for such person should be annulled. Testator's daughter was an infant and the probate was contested by her special guardian. The court held the condition inoperative and void as against public policy as conflicting "with the organic or statutory law of the State, by which it is made the duty of the courts to look after the rights of infants " (p. 551).

The opinion, however, also contains the following significant language (at p. 549): "Taken together * * * they constitute a conditional bequest * * * determinable in the event that the daughter, in person or by another, contests the probate of such will. This is not an unlawful provision when contained in a last will and testament. The testator, having the right to say to whom his property shall be bequeathed and devised, had the right also to make it as a condition of any gift that the recipient thereof shall not contest the probate of the will."

In *Matter of Vandevort* (62 Hun, 612) the will provided that if any person presented a claim against the estate, such person and all others of his family should lose all benefits thereunder. A claim was presented and established and the question for determination was as to whether such claimant and all his children, who were also legatees, had lost their rights. The decision, which was in the negative, was expressly based (p. 615) on an interpretation of the language of the will which was said to be based on an erroneous assumption of fact, which, when demonstrated to be false, would give way to the general testamentary intent. At page 616 the court, however, adds: "A personal legacy, without any gift over, and which fails by reason of the taking effect of a condition subsequent, when made in the limited restraint of marriage or against the contesting of wills, does not fail. * * * We know of no reason why the rule should be limited to the cases stated by Jarman. That author did not have in mind, doubtless, the fact that other conditions, such as the one before us, might be met in last wills."

Coming now to decisions of the Appellate Division which succeeded the General Term as the intermediate appellate court, the first decision encountered is *Matter of Arrowsmith* (162 App.

Div. 623). In this case the chief question concerned the validity of the gift of the remainder of the estate " for the endowment of two single rooms " in a home for old men and aged couples. The remainder turned out to be $200,000, and it was demonstrated " that the fixed cost of endowing a room " in the home was $5,000. The decision below held that the clause should be effectuated only to the extent of $10,000, and over four-fifths of the opinion is devoted to this question, the court with some apparent reluctance determining that the entire residue must go to the home.

The remaining question concerned the effect to be given to the " sixth " item of the will, which read: " If any relative contests the probate of my will, or makes any attempt to prevent the carrying out of my intentions, as herein expressed, then I direct that such relatives shall lose and forfeit any claim or interest he or she may have therein, under any of the above provisions."

Augustine L. McCrea was such a legatee to the extent of $2,000. The will was probated without contest and McCrea had actually received the amount of his legacy. Thereafter he commenced an action in the Supreme Court for the purpose of invalidating the will by reason of undue influence and incompetence. He did not press it, however, and with his acquiescence a judgment was entered dismissing his complaint and establishing the validity of the will. The surrogate was of the opinion, and " so decreed, that in consequence of this action * * * he forfeited his legacy."

In evaluating the weight of the reversal of this determination by the Appellate Division it may not be amiss to note the result which a contrary determination would have effected. *First,* the home, which had already been awarded $200,000, when the testatrix apparently contemplated that it would receive only $10,000, would be further enriched to the extent of $2,000; *second,* the executor, who had already paid the $2,000 legacy in apparent good faith, would be surcharged with this sum, which he might or might not be able to recover from the legatee; and finally, if he could raise the money, the relative of the deceased would be compelled to turn over this comparatively insignificant benefit for the further enrichment of the charity which had apparently profited to the extent of twenty times the amount which testatrix presumably contemplated.

It is proverbial that hard cases make bad law. In its opinion of reversal, the Appellate Division used the following language (at p. 628): " As to when a legacy is forfeited under such a clause in a will as the one quoted above there is no little confusion in the cases, with little that can be said to be authoritative. The approved

rule appears to be that in case of a legacy of personal property such a provision is merely *in terrorem* and not enforcible unless there be a gift over in case of breach, and that a general gift of the residue is not a gift over. (*Hogan* v. *Curtin*, 88 N. Y. 164.) The rule seems to be otherwise in case of a devise of realty, but in this case the direction to the executor to sell the real estate was imperative and worked an equitable conversion so that the gift to the home was of personalty."

The next Appellate Division decision on the question occurred two years later, in 1916, in *Matter of Kirkholder* (171 App. Div. 153). The testamentary document in that case contained the following language (See 86 Misc. 692, 693): " I further will and direct that if any person named in this will shall in any manner controvert, dispute or call in question the validity of this will, then and in such case the interest, legacy or bequest of such person so disputing this will or calling in question the validity thereof, shall be added to and pass as a part of and under the residuary clause of this will to such person or persons as shall be entitled thereunder and thereto.".

The widow presented for probate an alleged subsequent will, which was determined to have been forged by her. Surrogate HART after a review of *Bradford* v. *Bradford* (19 Ohio St. 546) and *Smithsonian Institution* v. *Meech* (169 U. S. 398) (which are more fully noted elsewhere) held (p. 696) that she was not entitled to participate in any share or portion of this estate.

The affirming opinion of the Appellate Division is elaborate and closely argued. The validity of the condition is assumed throughout, the major portion of the discussion relating to the question of whether the presentation of the alleged subsequent will was within the testamentary language hereinbefore quoted. The court says (at p. 155): " if she herself made and offered for probate a forged instrument purporting to be a later will, with intent to defeat the genuine will in all its provisions and to acquire the whole estate for herself, she should be held to have controverted and disputed the validity of the genuine will exactly as if she had contested its validity when offered for probate."

The final Appellate Division decision for note is that in *Unger* v. *Loewy* (202 App. Div. 213; revd. on other grounds, 236 N. Y. 73). This was an action to construe a will in which it was alleged that its terms infringed the provisions of section 17 of the Decedent Estate Law by reason of excessive gifts to charities. The ruling of the court (at p. 218) reads as follows: " It is not contended here that the forfeiture declared in the will to any one who should contest the will by an action for construction thereof forfeits the

right of the widow to make this contention. It is impossible that a statute made for the benefit of a widow and next of kin could be avoidable by any such provision in a will."

This review of the only decisions of this State which are binding on this court demonstrates the law on this subject to be, that an application for, and participation in, a proceeding for a construction of a will will not be considered as coming within a condition inhibiting a contest, whether the construction be for the purpose of determining testator's actual intention (*Woodward* v. *James*, 44 Hun, 95) or to obtain a declaration of invalidity by reason of infringement of statutory limitations. (*Unger* v. *Loewy*, 202 App. Div. 213.) Furthermore, such a condition will not apply to an infant. (*Bryant* v. *Thompson*, 59 Hun, 545.)

Two decisions (*Bryant* v. *Thompson*, 59 Hun, 545, and *Matter of Kirkholder*, 171 App. Div. 153) directly upheld the integrity of the testamentary direction and the right of the testator to impose such lawful conditions on the enjoyment of his property by others as he may elect, and one decision, made under obviously difficult conditions (*Matter of Arrowsmith,* 162 App. Div. 623), and one dictum (*Matter of Vandevort*, 62 Hun, 612) tend to undermine this basic testamentary right, by a return of the anomalous and baseless distinction between gifts of real and personal property engrafted on English jurisprudence from the civil law but preponderantly repudiated in this country.

So far as authority binding upon this court is concerned, the weight of decision is, therefore, that a stipulation contained in a will giving a benefit only on the condition that no contest be interposed, is valid and should be enforced, with the limitation that such condition shall not be held to apply to a construction proceeding, and is not binding upon a special guardian.

Whereas, on this subject, the familiar principle of *stare decisis* appears inapplicable, since an upholding of the integrity of the testamentary language would not adversely affect any person who may have drawn his will after a study of all relevant decisions on the subject in this State, it will be of profit to consider the effect upon previous decisions of courts of first impression which an application of this preponderantly accepted rule would have produced.

There have been twenty-two *nisi prius* decisions on the subject in this State. In fourteen of these conditional limitations have been held ineffective to prevent the legatee receiving the benefit, while in eight they have been sustained.

In six of the fourteen which have declined to enforce the condition, the only act of the beneficiary which, it was contended,

defeated the gift was participation in a construction proceeding. These cases are *Matter of Vom Saal* (82 Misc. 531); *Matter of Hamilton* (100 id. 72); *Matter of Farmer* (99 id. 437); *Matter of Kozlay* (104 id. 120); *Matter of Fellion* (132 id. 805) and *Matter of Storey* (134 id. 791). In four the decisions turned on an interpretation of the language of the will, it being determined in three that the particular invalidating acts alleged were not within the scope of the language employed (*Matter of Bratt*, 10 Misc. 491; *Matter of Marshall*, 119 id. 407; *Matter of Cronin*, 143 id. 559), and in the fourth, that the condition was too indefinite for enforcement and was void for uncertainty (*Matter of Jackson*, 47 N. Y. St. Repr. 443). There remain in this category only four decisions in which the results attained might have differed if the generally accepted American rule had been followed. In *Jackson* v. *Westerfield* (61 How. Pr. 399) the court refused to void the condition on the ground that the litigation was not vexatious; in *Matter of Fox* (114 Misc. 368) it was expressly noted as one of the *rationes decidendi* that the only person who would benefit by a declaration of invalidity of the legacy did not urge it, and in *Matter of McArdle* (147 Misc. 876) the entire question was academic so far as is disclosed by the opinion.

The sole remaining decision of this type is *Matter of Wall* (76 Misc. 106) which applies the English rule, but adds the following pertinent remarks concerning it (at p. 109): " No reason is seen, none has been found in the literature of this subject, for any distinction among the various conditions with which testators may have inclined to surround their benefactions. Any rule applicable to the condition in partial restraint of marriage would seem equally appropriate to the condition against attacking the will. If the unmistakable direction can in one case be regarded as a mere empty threat it must naturally have the same interpretation as to the other direction. Indeed, both contentions have often been discussed together upon the evident conviction that they were subject to the same rules."

Turning now to the other side of the picture, six opinions of courts of first impression have sustained the rights of testators to dispose of their property only to the persons and on the conditions of their own choosing. These decisions are found in *Rank* v. *Camp* (3 Dem. 278); *Matter of Stewart* (1 Con. 412); *Matter of Bratt* (10 Misc. 491); *Matter of Barandon* (41 id. 380); *Kelley* v. *Winslow* (73 id. 642); *Matter of Vom Saal* (82 id. 531), and *Brown* v. *O'Barn* (120 id. 550).

It is accordingly apparent that if any argument based on the principle of *stare decisis* were to be employed, it would tend rather

to support the integrity of a testamentary limitation than the reverse.

The only attempt which appears ever to have been made to logically justify a refusal by the courts to enforce testamentary conditions of this type as written, is found in the interesting discussion of former Surrogate FOWLER in *Matter of Kathan* (141 N. Y. Supp. 705, not otherwise reported). His observations are admittedly purely dicta, since the question of validity or invalidity was not before the court (p. 707).

His argument is based on five premises which he states as follows:

*First.* " It may be stated as a primary rule of law, now governing legacies, devises, or other testamentary gifts, that the testator may limit them absolutely or on conditions, provided such conditions are lawful by the law governing conditions " (p. 708).

*Second.* " Testators are not by the common testamentary law justified in prescribing unlawful or impolitic conditions or conditions contrary to the order of the state " (p. 708).

*Third.* " In any limitation testator must see to it that the condition, as expressed in his will, does not violate the common law governing conditions; otherwise the condition is void " (p. 708).

*Fourth.* " We must remember that the statute of wills is a part of the public law " (p. 710).

*Fifth.* " A condition that an heir shall not be permitted to show testator's want of testamentary capacity or his other noncompliance with the statute of the state without forfeiting the legacy is, I think, contrary to public order and policy " (p. 710).

On these five premises he reaches the conclusion that any " condition, certainly if subsequent, ought to be adjudged void " (p. 710).

Of course the correctness of any logical syllogism depends wholly upon the verity of the premises advanced for its support. In the present instance the first four are unquestionably true. The fifth is equally unquestionably false. The falsity may be demonstrated by recourse to authority, for which purpose the holding in *Matter of Cook* (244 N. Y. 63, at p. 71) is ample, it being there expressly held that agreements not to contest a will " are not against public policy." Since the taking of a legacy conditioned on abstention from contest inevitably implies an agreement so to abstain on the part of the legatee, it follows that the condition is, on the conclusive authority of the Court of Appeals, not contrary to public policy and is, therefore, valid and enforcible.

There is, however, a further innate fallacy in Surrogate FOWLER's fifth premise. Conditions against contest do not inhibit an heir's

showing " testator's want of testamentary capacity or his other non-compliance with the Statute " of Wills. He is at entire liberty to *show* such matters. Such conditions merely inhibit his taking if he participates in a contest and *fails to show them*. His liberty of action is wholly unrestrained. The only effect of such a condition is to compel him to act at his peril and to prevent him from sharing in the distribution of the property of his benefactor after he has participated in wasting the assets of the estate, and dragging the name and memory of the testator through the mire.

It is to this situation that the following pertinent words of the United States Supreme Court in *Smithsonian Institution* v. *Meech* (169 U. S. 398, 415) are addressed: " Experience has shown that often after the death of a testator unexpected difficulties arise, technical rules of law are found to have been trespassed upon, contests are commenced wherein not infrequently are brought to light matters of private life that ought never to be made public, and in respect to which the voice of the testator cannot be heard either in explanation or denial, and as a result the manifest intention of the testator is thwarted. It is not strange, in view of this, that testators have desired to secure compliance with their dispositions of property and have sought to incorporate provisions which should operate most powerfully to accomplish that result. And when a testator declares in his will that his several bequests are made upon the condition that the legatees acquiesce in the provisions of his will, the courts wisely hold that no legatee shall without compliance with that condition receive his bounty, or be put in a position to use it in the effort to thwart his expressed purposes."

There remain for consideration the hints, usually by way of dictum, which the Court of Appeals has from time to time given respecting its attitude on the subject.

" Now it is the general rule of law that a breach of a lawful condition annexed to a legacy, either divests it, or prevents an estate therein arising in the legatee, depending upon whether the condition is precedent or subsequent." (*Hogan* v. *Curtin*, 88 N. Y. 162, 171.)

" The condition where there is no devise over, is said to be *in terrorem* merely, a convenient phrase adopted by judges to stand in place of a reason for refusing to give effect to a *valid condition*." (*Hogan* v. *Curtin*, 88 N. Y. 162, 171. Italics not in original.)

" The distinction made in cases where there was an express devise over does not seem to be founded upon any principle." (*Hogan* v. *Curtin*, 88 N. Y. 162, 172.)

" Where, upon inspection of the will and upon a consideration of relevant facts and circumstances, an intent is apparent, all rules to the contrary must yield; provided that intent does not offend against public policy, or some positive rule of law." (*Robinson* v. *Martin*, 200 N. Y. 159, 164.)

" Agreements not to contest * * * are not against public policy." (*Matter of Cook*, 244 N. Y. 63, 71.)

" We are not here dealing with agreements made after the death of the testator, but agreements made *before* the death of the testator regarding the future disposition to be made of an estate, and the claims of the parties thereto. Such agreements are akin to those implied in the taking of a legacy bequeathed upon the condition stated in the will that no contest shall be made. Such provisions have been recognized as good. (*Bradford* v. *Bradford*, 19 Ohio St. 546; 2 Jarman on Wills, *902; 2 Redfield on Wills, *298; *Smithsonian Institution* v. *Meech*, 169 U. S. 398; *Moran* v. *Moran*, 144 Iowa, 451. But, see, *Matter of Arrowsmith*, 162 App. Div. 623, and *South Norwalk Trust Co.* v. *St. John*, 92 Conn. 168.)" (*Matter of Cook*, 244 N. Y. 63, 69.)

The holdings in *Bradford* v. *Bradford* and *Smithsonian Institution* v. *Meech*, which are two of the three decisions for which the Court of Appeals appears to indicate a preference in the foregoing quotation, have already been reviewed. The language of *Moran* v. *Moran* is no less illuminating and unambiguous. The following is found (at pp. 462 *et seq.*): " A few courts have held the condition inoperative where the beneficiary has probable cause for the contest of the will, while still others reject all these distinctions as arbitrary, and hold the condition valid and enforceable in all cases, whether the gift be of realty or personalty, and without regard to the cause or ground of contest. The latter view appears to be the one now generally held, and to our minds is most in consonance with reason and sound principle. [Citing authorities.]

" The objection that such conditions are against public policy has frequently been made; but we do not find that it has ever been upheld by any court of this country. * * * The donee is under no compulsion to accept the gift. He is free to elect. The question he has to decide is the ordinary one which arises in nearly every business transaction — whether the thing offered him is worth the price demanded. The owner of property may give or refrain from giving. He may attach to his offer such lawful conditions as his reason, caprice, or malice may dictate, but he is dealing with his own, and the donee, who claims the benefit of the gift, must take it, if at all, upon the terms offered."

Although judicial straws may on occasion reverse the adage respecting the course of the prevailing trend, it would seem from these several indications beginning in 1882 and continuing almost to the present time, that the Court of Appeals is prepared, when the occasion presents, to align itself with the preponderant weight of American judicial thought on this subject and vindicate in this regard the right of a testator to deal with his own property in the way he sees fit, so long as he respects the laws and public policy of the State.

In the third item of his will, in the case at bar, the testator provided: " I give and bequeath to my niece Ethel Ottinger and to my nephew, Joseph F. Brush, each the sum of $1,000.00."

The seventh item read: " If any person herein mentioned should directly or indirectly contest this my last will and testament in any manner, I hereby revoke any legacy or bequest to such person and direct that it be disposed of in the manner set forth in the sixth clause herein."

The sixth item provided: " All the rest, residue and remainder of my estate of every kind and nature, I give, devise and bequeath to my sisters Ada Brush and Florence Smith, share and share alike."

The petition of the executrix, Ada M. Brush, alleges, in effect, that Ethel Ottinger has breached the condition attached to the legacy to her, by contesting the will.

The answer of Ethel Ottinger " admits that she filed objections to the probate of the will of said John S. Brush, deceased, that trial by jury was duly had on said objections, that the surrogate directed a verdict dismissing the said objections and that the will was duly admitted to probate."

On this demonstration it must be determined for the reasons and on the authorities hereinbefore reviewed, that Ethel Ottinger has breached the condition upon which her gift was limited, that such condition was valid and binding upon her, and that in consequence the $1,000 conditionally given her shall be paid in equal parts to Ada Brush and Florence Smith pursuant to the direction of the testator.

Enter decree on notice.