In the Matter of the Estate of JULIA C. VOORHIS, Deceased.

Surrogate's Court, New York County, April 24, 1941.

*Arthur T. O'Leary*, for the petitioner.

*George W. Cornell*, for the objectants.

*Frederick W. Sperling*, special guardian.

*William J. McArthur*, for the United States Fidelity and Guaranty Company.

*Sunshine Ulman*, as general guardian for the infant and as attorney for Charles R. Jones.

DELEHANTY, S. Deceased died in 1922 leaving a will which named Arthur J. Martin as executor and trustee. Mr. Martin died in November, 1924. Thereafter Samuel W. Maguire was appointed successor trustee. By separate order he was appointed to administer the trust created by the twenty-fourth paragraph of deceased's will. The text of this paragraph and that of the twenty-fifth paragraph, which is pertinent thereto, follows:

" *Twenty-fourth.* I give and bequeath to my said trustee the sum of Ten thousand Dollars, to be used by him to place a memorial window, or some other memorials, to cost any sum in his discretion up to the sum of One thousand Dollars, in Christ Church Cathedral, at St. Louis, Mo., and to place monuments and markers in my family subdivision of the Clark and Glasgow plot in the Bellefontaine Cemetery, at St. Louis, Mo.

" *Twenty-fifth.* I give and bequeath to Bellefontaine Cemetery Association of St. Louis, the sum of Four thousand Dollars, in trust, for the perpetual endowment care and maintenance of my family subdivision of the Clark and Glasgow plot in the Bellefontaine Cemetery, at St. Louis, Mo., according to the rules and regulations of said Association. Such interest as may be allowed on said bequest shall be applied to the care, maintenance, improvement and embellishment of my said plot and for the preservation, repair, restoration, or replacement of any monumental or other stone work on my said plot, should the occasion therefor arise."

Mr. Maguire is now dead. His executrix is accounting for his transactions in all his trust capacities. Her account shows his receipt on March 17, 1926, of $10,000 in cash with which " to erect the trust " under paragraph twenty-fourth of the will. Schedule B

shows a payment of $1,000 on July 7, 1927, for a memorial window in Christ Church Cathedral at St. Louis, Mo   This schedule also shows payment of $1,732.60 on September 12, 1927, for monuments and markers.   From Schedule G it appears that on January 18, 1928, Mr. Maguire purchased a mortgage participation certificate in the amount of $6,500.   With the income therefrom he paid various items of bond premiums, commissions, rental for safe deposit box and premiums on insurance covering a structure known as the William Clark monument in a cemetery.   The parties have stipulated the facts which explain this last cited expenditure.   In the Bellefontaine Cemetery in St. Louis, Mo., the family of which deceased was a member owns a circular plot ninety-two feet in diameter.   Its area is stated to be 6,647 square feet.   Twenty-nine persons are there interred.   In the plot are eighteen granite monuments and markers, many of which are of substantial dimensions. The main and most imposing monument memorializes General William Clark of Lewis and Clark Expedition fame.   Julia C. Voorhis was a granddaughter of General Clark.   General Clark died in 1838 and the monument to his memory was unveiled in 1904.   Its reproduction cost is $60,000.   This monument is exposed to possible damage or destruction by smoke, falling trees and high winds.   To provide against these and other contingencies Mr. Maguire from and after December, 1926, procured insurance on which to the date of the present account premiums aggregating $619.50 were paid.   It is stipulated that neither the cemetery association nor the fund in the hands of Mr. Maguire under paragraph twenty-fourth of the will could replace the William Clark monument in the event of its destruction.   It is also stipulated that since deceased's burial in 1922 one other member of the family has been interred in the family plot and that other members of the family may be buried there in the future.

The residuary estate of deceased was disposed of by paragraph thirtieth of her will which says: " I give, devise and bequeath all the rest, residue and remainder of my property, both real and personal, including lapsed and failing devises and bequests remaining after the satisfaction of the foregoing provisions of this my will, to the hereinbefore mentioned natural persons, except my said aunt and Arthur J. Martin, *pro rata* and in proportion to their several money bequests, whether the same be given outright to the legatees or to my said trustee, in trust, for the use of the beneficiaries."

The " natural persons " referred to in the text had interests aggregating $236,000.   Certain of them, with interests aggregating $88,000, together with a special guardian who represents an incom-

petent " natural person " with a $500 interest, have objected to the account. They seem to proceed on the assumption that by paragraph twenty-fourth a valid trust was created, that it was a trust which could be executed by a successor trustee but that it terminated in September, 1927, when the monuments and markers referred to in Schedule B of the account were paid for. They seek a decree disapproving investment of a portion of the fund in the mortgage participation certificate and disallowing (with some slight exceptions) all claimed credits for expenditures reported in Schedules C-1 and C-2. These objectants seem to concede that the deceased successor trustee had power to expend up to $9,000 on monuments and markers but argue that since he actually chose to spend only $1,732.60 he held the balance of $7,267.40 for the benefit of the residuary legatees and was under a duty to pay over that balance. The accountant assumes that a valid trust was created by paragraph twenty-fourth and contends that it is still active. She bases her position on section 13-a of Personal Property Law.

In the absence of statute a bequest or devise to a trustee for erection of monuments and markers on private burial grounds is an anomolous gift. As a private trust it is defective because it has no specified beneficiary. As a public or charitable trust it is defective because it lacks even unascertained beneficiaries and is not for public purposes. Such a gift is analogous to the bequest considered in the leading case of *Morice* v. *Bishop of Durham* (9 Ves. Jr. 399; 32 Eng. Reprint, 656; affd., 10 Ves. Jr. 521; 32 Eng. Reprint, 947) where a gift was made to the bishop accompanied by a direction that it should be applied to such objects of " benevolence and liberality " as might be selected by him in his absolute discretion. Sir WILLIAM GRANT and Lord ELDON agreed that this gift produced a resulting trust with beneficial ownership in the *cestuis* thereof in no way limited by the power of disbursement which deceased purported to give to the bishop. The circumstance that the bishop was willing to carry out the intention of the deceased was deemed immaterial. Since there was no way of enforcing the bishop's obligation (his duty resting on his honor rather than on someone's rights) the courts held that the testamentary scheme must fail.

Trust gifts wholly lacking in beneficiaries are treated by the law writers as honorary or incomplete trusts. Prof. Scott and Dean Ames are sharply critical of the doctrine of *Morice* v. *Bishop of Durham* in itself and as extended to gifts in trust to erect monuments and markers, while Gray and Prof. Bogert are equally emphatic in supporting it. (Scott, Control of Property by the

Dead, 65 U. of Pa. L. Rev. 527, 537, 538; 1 Scott on Trusts, § 124.2; Ames, The Failure of the Tilden Trust, 5 Harv. L. Rev. 389; Gray, Gifts for a Non-Charitable Purpose, 15 id. 510; 1 Bogert on Trusts and Trustees, §§ 164–166.) The actua point of disagreement between these scholars does not relate to whether a resulting trust is created by such gifts. The question they debatc is whether the trustee of the resulting trust which is assumed to arise can divest the *cestui* of his interest in whole or in part by undertaking *freely* to discharge the honorary obligations of the trust. In this connection it is Scott's opinion that " there is nothing illogical in allowing him to perform, although he cannot be compelled to do so; there is nothing unreasonable in holding that there is not an immediate and unconditional resulting trust for the next of kin (or residuary legatees), but that there is a resulting trust for them subject to a condition precedent of the failure of the (legatee) to perform." (65 U. of Pa. L. Rev. 527, 538.) This seems to be a valid comment on the principle involved (Cf. Honorary Trusts and The Rule against Perpetuities, 30 Col. L. Rev. 60, 69) if the comment is understood to concede the immediate vesting of rights in the *cestuis* subject to defeat if the trustee acts within his powers.

A distinction is to be noted between a gift for erection of a monument or marker on a testator's own grave and a gift for such monument or marker to be erected on the graves of others. The former gift is properly part of the funeral expenses of deceased (*Wood* v. *Vandenburgh*, 6 Paige, 277, 285; *Matter of Voelker*, 158 Misc. 97; *Emans* v. *Hickman*, 12 Hun, 425; Surr. Ct. Act, § 314, subd. 3) while the latter is validated in this State and is deemed for a charitable use because of section 13-a of the Personal Property Law. (*Matter of McArdle*, 147 Misc. 876, 882.) Being valid under the cited section the question is presented whether the trust has been correctly administered.

It is to be noted that in paragraph twenty-fourth of the will here deceased did not direct the expenditure of $1,000 on a memorial window and of $9,000 on monuments and markers. The authority she gave was permissive, not imperative. No obligation rested on her legatee to spend any particular sum on the objects specified. Could such authority be exercised by a successor trustee where the named trustee has failed to qualify? This question sharpens the problem formulated by the present case. If the gift made here was accompanied by a positive command to spend the money given for the purposes specified it would undoubtedly be a charitable trust under the statute and also a trust which could be executed by a trustee other than the nominee of deceased. A gift of that kind

could never result at any time in vesting property rights in deceased's residuary legatees. Scott in this connection says (1 Scott on Trusts, § 124): " If a testator bequeaths money for the purpose of erecting a monument, or caring for an animal, and the legatee predeceases the testator, or dies before applying the money to the intended purpose, will the court appoint a substitute to carry out the purpose? The authority conferred upon the legatee would normally not be of such a personal character that the settlor would intend that its exercise should be limited to the person designated by him. The difficulty is, of course, that no enforceable trust was created. If an enforceab e trust is created, there is no difficulty in appointing a substitute trustee and no difficulty in c'othing him with the powers which were not intended to be exercised only by the trustee originally designated." Scott precedes the text· just quoted with the statement: " There is one question which has not been raised in the cases." After the quoted commentary on clearly enforceable trusts he poses the open question and his answer thereto thus: " But if the legatee is clothed merely with a power to apply the property to the designated purpose, can the court authorize a substitute to exercise the power? I am inclined to think that there is no sufficient reason why the court should not do so." Objectants are not barred from invoking a contrary answer by the court, since the appointment of a successor trustee was made *ex parte* and without notice to them.

Each honorary trust (unless of a kind that is charitable by virtue of a statute) lacks the principle of enforcibility. When an honorary trust is enforcib'e by reason of its statutory status as charitable the trustee is subject either to specific or to general instructions. The court is of the view that when the instructions are specific the prior death or the disqualification of the settlor's nominee will not prevent the execution of the trust. This was held on like facts in the late case of *Fitzgerald* v. *East Lawn Cemetery, Inc.* (126 Conn. 286; 10 A. [2d] 683). But where as in the present case the testatrix gives only a definite sum of money without requiring it to be whol'y employed for the purpose of the trust the failure of the named trustee to act prevents· the execution of the trust. The reason is that in the first case no property results to the settlor's distributees or residuary legatees while in the second case such resulting rights do occur. In the one case by direction of the testator the whole fund is bequeathed away from the potentia! *cestuis* of any trust that might result but in the other case they have property rights which fasten on the property at the moment deceased dies subject to the divestiture thereof which the testator's nominee *and no one else* may cause to occur through exercise of

the power granted him exclusively under the will. The whole beneficial interest in such property has vested at the moment of deceased's death. This property to an uncertain extent may be applied to the " charitable " purpose defined by deceased but the only person to the risks of whose judgment on disbursement the *cestuis* could be properly subjected is the person endowed by deceased with this extraordinary power. If by reason of his death or disability he fails to exercise the power given him the entire fund necessarily belongs to the *cestuis* under the resulting trust. Under deceased's will the grant was not only in terms subject to the discretionary use of the named legatee but the nature of the objects to be attained necessarily involved the exercise of the discretion of a person having deceased's confidence. Her language does not fit the viewpoint of an impersonal expenditure.

The court is thus led in principle to sustain the objections to transactions reported in respect of the fund set up by paragraph twenty-fourth of the will. As already noted these objections do not complain of the actual expenditures for the memorial window or for monuments and markers. They relate only to the balance on hand after deducting such sums and to the application of the income therefrom. The court surcharges the account of the deceased trustee with the principal sum of $7,267 40 and the interest collected thereon. Against this sum will be credited the first two items of Schedule C-2, the premiums on the trustee's bond and commissions when properly computed. The claimed credit for payment of insurance premiums on the William Clark monument is disallowed as is the claimed credit for payments as rental for a safe deposit box. The participation certificate shown in Schedule H as now on hand will be deliverable to the estate of the deceased substituted trustee when the whole sum charged to him has been fully paid. The follow ng specific rulings on objections are necessitated by the foregoing general rulings:

(Specific rulings on objections which are not of general interest are omitted.)

Submit, on notice, decree settling the account accordingly.