GARDNER IVES PORTER, et al., v. ROBERT S. BAYNARD, as Executor under the Will of Ann Porter, Deceased, et al., AND GARDNER IVES PORTER, et al., v. UNION TRUST COMPANY, a corporation, et al.

CONSOLIDATED CASES

28 So. (2nd) 890
October 11, 1946
Rehearing denied November 21, 1946

June Term, 1946
En Banc

*Howard E. Joseph, Anna A. Krivitsky, Mabry, Reaves, Carlton, Anderson & Fields, Boyd Roebuck* (Cincinnati, Ohio) and *Joseph & McClelland* (Columbus, Ohio), for appellants.

*Kooman & Harris,* for Union Trust Company; *James T. Smith* for Bertha Pauline Genau, and *Robert S. Baynard* for Robert S. Baynard, as Executor, for appellees.

CHAPMAN, C. J.:

Ann Porter died on December 20, 1940. She left a will and two codicils which were admitted to probate on January 2, 1941, by the County Judge's Court of Pinellas County, Florida, and letters testamentary issued on the same day to Robert S. Baynard, as executor under the will. The estate was valued at approximately $180,000.00, and among the assets were two hotels situated in St. Petersburg called the Albermarle Sr. and

Albermarle Jr., of an appraised value of $120,000.00. These two hotels, by the terms of the will, were devised to the Union Trust Company, of St. Petersburg, in trust.

The Union Trust Company and Robert S. Baynard, as executors, filed separate suits in the Circuit Court of Pinellas County under the provisions of Section 87.01, et seq., Fla. Stats. 1941 (F.S.A.), praying for specific instructions as to their legal duty based on many of the provisions of the last will and testament of Ann Porter. Attached to the bill of complaint are copies of the will and codicils. The two suits were consolidated and a single final decree entered in the lower court which disposed of the two suits. An appeal has been perfected here, where the two suits were argued together pursuant to an order of consolidation.

Section 19 of the last will and testament of Ann Porter provides:

"I give, devise and bequeath to the UNION TRUST Company, of St. Petersburg, Florida, in trust nevertheless, the properties known as follows:

"Hotels Albermarle Sr. furnished and equipped, and Albermarle Jr. furnished and equipped to create a Memorial Fund to be known as the Porter-Genau Memorial Fund in honor of my deceased husband and two brothers, which properties are described as follows: . . . said properties and certain net income therefrom to be used to create a memorial fund in honor of my deceased husband, Edward Jarvis Porter, and my two brothers, George Carl Genau, and Anthony Henry Genau, the said memorial to be known as the Porter-Genau Memorial Fund. In addition to the foregoing properties and that portion of the hereinafter directed invested net income from said properties that shall be added to the principal of said fund there shall also be added to the principal of said fund the proceeds from Policy No. 8409-292, Equitable Life Assurance Society of New York on the life George M. Coslick, I being the irrevocable beneficiary under this policy. The proceeds from said policy are to be invested and re-invested in good, substantial investments by my trustee and one-half of the net income therefrom is to be used with certain other net income from the properties or investments of the Porter-Genau Me-

morial Fund in carrying out the charitable bequests hereinafter in this Will made.

"This Memorial, IN TRUST NEVERTHELESS, is for the following uses and purposes:

"I direct that one half of the annual net income from the properties or investments in this Will devised in trust for said fund shall be placed in good, substantial investments and included among said investments is to be the annual premium of $548.70 due April 2nd upon the aforesaid policy No. 8409-292 until the principal is realized from the said policy. The said one-half of the annual net income to be invested and reinvested from time to time as the trustee may deem to the best interest of the trust, in substantial investments and is to be used entirely for the preservation of the Porter-Genau Memorial Fund in perpetuity.

"The other one-half of the net income derived properties and investments belonging to said memorial fund is to be used for annual donations from the Porter-Genau Memorial Fund to the following organizations:

| | |
|---|---:|
| "The Theosophical Society of Point Loma, California | $2,000.00 |
| Library for Girls through League of Women Voters or Woman's Club, St. Petersburg, Florida | 200.00 |
| Shoes for needy white children through the Exchange Club of St. Petersburg, Florida | 200.00 |
| Shoes for needy colored children through the Exchange Club of St. Petersburg, Florida | 200.00 |
| Crippled children through the Rotary Club of St. Petersburg, Florida | 500.00 |
| Eye glasses through Lions Club of St. Petersburg, Florida | 100.00 |
| Crittenden Mission of St. Petersburg, Florida | 100.00 |
| Faith Mission of Crystal Beach, Florida | 500.00 |
| Mercy Hospital of St. Petersburg, Florida | 200.00 |

"The said above donations are to be paid on June 1st of each and every year.

"I further direct my trustee that the foregoing amounts are to be increased or decreased proportionately, according as

the total amount of the net one-half income from the properties heretofore placed in trust shall bear to the respective amount given to each charitable beneficiary.

"I further direct my trustee that in the event any of these aforementioned organizations should go out of existence that such amount as would go to such organization had it continued in existence is to be divided among the other remaining beneficiaries, share and share alike. The trustees shall be bound to observe the following instructions in handling the properties devised or bequeathed to it in trust hereby:

"(1) My Trustee is directed to lease the said Albermarle Hotels for a period of from eight to ten years after my Executor has finished the administration of my estate and to collect the rents from said properties, pay taxes, and assessments thereon, keep the same in proper and good repair and to look after the said hotel properties in a business like manner.

"(2) My Trustee is directed that after leasing said properties for a period of from eight to ten years, if at that time it is deemed advisable and for the best interest of said trust aforesaid, then said hotel properties are to be sold. Said price offered for said properties and said sale of same to be approved by the County Judge of Pinellas County, Florida. The proceeds derived from said sale shall be invested and reinvested in good, substantial investments and the net income derived therefrom is to be used for the carrying out of the terms of the heretofore created trust."

Paragraph 19 of the Ann Porter will, *supra,* created or established the Porter-Genau Memorial Fund for the purpose of honoring the memory of testator's deceased husband and two brothers. Hotels Albermarle Sr. and Albermarle Jr., with furnishings and equipment located in St. Petersburg, Florida (estimated value of the two hotels fixed at approximately $120,000.00), were by the terms of paragraph 19 devised to the Union Trust Company in trust: "and the properties and certain net income therefrom to be used to create a memorial," "and the said memorial to be known as the Porter-Genau Fund."

Sub-section (1) of paragraph 19 directed the trustee to lease the hotels for a period of from eight to ten years *after* the executor finished the administration of the estate and to collect the rents from the properties, pay taxes, and assessments thereon, keep the same in proper and good repair, and to look after the hotel properties in a businesslike manner.

Sub-section (2) of paragraph 19 directs the trustee that after leasing the hotel properties from eight to ten years, if at that time it was deemed advisable and for the "best interest of the trust aforesaid," then the hotel properties are to be sold. The price offered for the properties and the sale of the same to be approved by the County Judge of Pinellas County, Florida. The proceeds derived from the sale of the hotel properties shall be invested and re-invested in good, substantial investments, "and the net income derived therefrom is to be used for the carrying out of the terms of the heretofore created trust."

Paragraph 19 provides that the Porter-Genau Memorial Fund shall receive the proceeds from Policy No. 8509-292 issued by the Equitable Life Assurance Society on the life of George M. Coslick. The proceeds from said policy must by the trustee be invested and reinvested in good, substantial investments, "and one-half of the net income therefrom is to be used from the properties or investments of the Porter-Genau Memorial Fund in carrying out the charitable bequests of the will."

Paragraph 19 further provides that moneys appearing to the credit of the Porter-Genau Memorial Fund shall be handled by the trustee viz: "one-half of the annual net income from the properties or investments . . . devised in trust for said fund shall be placed in good, substantial investments and included among said investments is to be annual premium of $548.70" . . . "until the principal is realized from said policy." The said one-half of the annual net income to be invested and re-invested from time to time as the trustee may deem to the best interest of the trust, in substantial investments and is to be used entirely for the preservation of the Porter-Genau Memorial Fund in Perpetuity. It further provides that the other one-half of the net income derived from the properties

and investments belonging to said Memorial Fund is to be used for annual donations from the Porter-Genau Memorial Fund for nine enumerated purposes, *supra.*

It was the clear intention of the testatrix, as we construe paragraph 19, to create the Porter-Genau Memorial Fund. The Memorial Fund so created was to exist for an indefinite period of time. She intended that the Memorial Fund during its existence should be preserved by her trustee. The preservation thereof was to be accomplished through her trustee, when one-half of the annual net income would be invested and then re-invested from time to time, to the best interest of the trust, in substantial investments, and one-half thereof was to be used in the preservation of the Porter-Genau Memorial Fund *in perpetuity.* The two hotels, at a subsequent date, were to be sold and the proceeds invested and re-invested in good, substantial investments and the net income to be used in preserving in perpetuity the Porter-Genau Memorial Fund.

It was the view of the lower court, as expressed in the final decree, that while paragraph 19 of the will directed the payment of one-half of the annual income of the Porter-Genau Memorial Fund to nine designated charities and the remaining one-half thereof was to be invested and re-invested by the trustee, from time to time, in substantial investments to be used exclusively for the preservation of the Porter-Genau Memorial Fund in perpetuity, the said trust therefore should be permitted to operate and continue under the supervision and control of a court of equity, although the apparent dominant purpose of the trust was not the nine charitable bequests set out *supra,* but the continuance of the aforesaid Memorial Fund in perpetuity, which entailed the accumulation of a huge sum of money in the Porter-Genau Memorial Fund without future limitation of time.

The case of Pelton v. First Savings & Trust Co., 98 Fla. 478, 124 So. 169, involved a will which provided that after certain bequests were satisfied, one-half of the entire net income arising therefrom should be paid quarterly to the Hillsborough County Humane Society at the discretion and under the supervision of the executor, while the remaining one-half of the income arising from the estate should each year be

added to and become a portion of the corpus of said estate. We held that the one-half of the annual income accumulated from year to year and added to the corpus of estate, indefinitely, offended the rule of perpetuity. We pointed out that the will provided for an unlawful accumulation in perpetuity of this one-half of the income, although vested in the trustee, and the testator having failed to name a beneficiary, we could not sustain or uphold the devise because it violated the perpetuity rule enunciated in previous holdings.

In the case of Story v. First Nat Bank & Trust Co., 115 Fla. 436, 156 So. 101, we in part said:

"Under the rule against perpetuities, the vesting of an estate under a will or deed can be postponed no longer than a life or lives in being and twenty-one years plus the period of gestation. This was the rule of the common law and prevails in Florida and other states if not modified by statute. Many states have modified it in various ways. 'Lives in being' has reference to those living at the date of the testator's death, not at the time of the execution of the will. Under the old common law it was possible by executory devise to perpetuate estates in families so as to prevent their alienation for any period of time or purpose the owner might desire. Such an estate was termed a perpetuity, in other words, a grant or devise wherein the vesting of the interest therein, is unlawfully postponed."

The law favors the early vesting of estates and in the absence of a clear intention of the testator to the contrary, estates are held to vest at the earliest possible date. The doctrine of remoteness being concerned solely with the question of vesting, if the created estate vests within the time allowed by the rule against perpetuities, the devise can or may be sustained. Story v. First Nat. Bank & Trust Co., *supra*.

See Redfearn on Wills & Administration of Estates, pp. 256-260, par. 162; Bogart on Trusts and Trustees, Vol 1, pp. 630-680, par. 213-218; 41 Am. Jur. 86-89, par. 42 and 43; 48 C. J. 985, par. 73; Gray on The Rule against Perpetuities (4th Ed.), pp. 624-634, par. 671-679; Pedrotti v. Marin County, Cal., 152 Fed. (2nd) 829; Trustees of Washburn College v. O'Hara, 75 Kan. 700, 90 Pac. 234; Troutman v. DeBoissiere

Odd Fellows,' etc., 66 Kan. 1, 71 Pac. 286; Wills v. Southwell, 334 Ill. 448, 166 N.E. 70.

It was the view of the Chancellor below that the intention of the testatrix, as expressed in paragraph 19, *supra,* was the creation of a trust for charitable purposes. Our studied conclusion is that the dominant purpose or intention of the testatrix was not charity but the creation and preservation of the Porter-Genau Memorial Fund in perpetuity as one-half of the Porter-Genau Memorial Fund is to be used by the trustee in its preservation in perpetuity, while the remaining one-half of the income is annually to be distributed among nine enumerated charities.

A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself if it is so described as to show that it is charitable in its nature. Jordan v. Landis, Att'y Gen'l., 128 Fla. 604, 175 So. 241. A definite definition of charity is well nigh impossible to frame. The courts should be left free to apply the standards of the time—on the theory that what may be charitable in one generation may be non-charitable in a later age, and vice versa. Ideas regarding social benefits and public good change from century to century and vary in different communities. It must expand with the advancement of civilization and the daily increased needs of man. Bogart on Trusts and Trustees, Vol. 2, p. 1129.

Charities, in a broad sense, are either public or private. A public charity is one in which the public at large or some undetermined portion of it, has a direct interest or property right or which the beneficiaries cannot be ascertained with certainty. 14 C.J.S. 415. A gift or bequest for the benefit or aid of defined persons is not in general a public charity but a private trust only. 14 C.J.S. 416. While the general rule is

that in order that a gift shall possess such certainty as will give it validity, the language must require that the fund shall be expended for charity and for nothing else. 10 Am. Jur. 595-6; Hadley v. Forsee, 203 Mo. 418, 101 S.W. 59, 37 L.R.A. (N.S.) 49. The fundamental distinction between "private trust" and "charitable trust" is that the case of a private trust property is devoted to the use of specified persons who are designated as beneficiaries of the trust, whereas in the case of charitable trusts property is devoted to purposes beneficial to the community. Old Ladies' Home Ass'n v. Grubbs' Estate, 191 Miss. 250, 2 So. (2nd) 593.

The principal reason for deciding whether a given trust is charitable or not is to determine the period of enjoyment of the described property. If the trust is dominantly charitable, then its perpetual character is not a vice under the law, but, on the other hand, if the trust is dominantly private, then its period of enjoyment is limited to no longer than lives in being when the trust started and twenty-one years thereafter plus the period of gestation. Bogart on Trusts and Trustees, Vol. 1, par. 218; Vol. 2, par. 352.

The conclusions having been reached that the creation of the Porter-Genau Memorial Fund in perpetuity violates the common law rule against perpetuities and our former adjudications, then a pertinent question arising on the record is viz, what is the legal effect of the invalid provision of paragraph 19 on the charitable provision of the same paragraph, and arguendo, conceding that the charity provision is public in character. Bogerty on Trusts and Trustees, Vol. 1, pp. 669-670, states the rule thusly:

"The accumulation trust is generally connected with another trust or a gift of succeeding interest. Wherever possible, the courts will separate out the other valid gift and support it. The void accumulation provision will cause the invalidation of another trust or gift only when the two are intimately connected, and to leave the other gift standing without the accumulation trust would be to violate the intent of the settlor and frustrate his broad general purpose. Occasionally a valid accumulation provision may be so linked with a later void gift as to fall with it."

41 Am. Jur. 100-101, par. 57, states the rule viz:

"When a part only of a gift is invalid by reason of the rule against perpetuities and the invalid limitation is an essential part of the general scheme of the will or gift, the several parts of the devise or the grant are treated as inseparable and the whole is adjudged void. Thus, if a part of the testator's general scheme or dominant intent is that an estate shall be kept entire for an unlawful period, no part of the scheme can be sustained, and the estate to which the void provisions relate vests immediately in the heir . . . The test is whether the invalid parts are so interwoven with those which are valid that the former may not be eliminated without interfering with or changing in any essential the main testamentary scheme. This can usually be done when it is clear that the gifts which do not transgress the rule are so independent that it is manifest that the testator would have desired that they should stand if he had been aware of the invalidity of the rest, but if the valid and invalid gifts are so connected that the presumed wishes of the testator would be defeated if one portion was retained and other portions rejected, or if manifest injustice would result from such construction to the beneficiaries or some of them, then all the gifts must be construed together and all must be held illegal and must fall. . . ."

Likewise see American Law Institute's Restatement of the law (Trusts), Vol. 1, 204-207, par. 65, viz:

"CONSEQUENCES OF ILLEGALITY. If a provision in the terms of the trust is illegal, the intended trust fails altogether if, but only if, the illegal provision cannot be separated from the other provisions without defeating the purpose of the settlor in creating the trust."

See 21 R.C.L. 320-321, par. 54; 48 C.J. 1027-1029, pars. 147-150; Estate of Rong, 109 Minn. 191, 123 N.W. 471, 26 L.R.A. (N.S.) 825; Simes on Law of Future Interest, Vol. 2, pp. 404-408, pars. 529-530.

The Porter-Genau Memorial Fund, by the terms of paragraph 19, obtains contributions from the following sources: (a) one-half of the net income annually derived from the operation of the two hotels; (b) the proceeds of a designated policy of life insurance issued by the Equitable Life Assur-

ance Society; (c) the memorial fund at a later date is to receive the proceeds of the sale of the two hotels when they are sold—the moneys to be used by the trustee for the preservation in perpetuity of the Porter-Genau Memorial Fund; (d) one-half of the net income is to be added annually to the corpus of the Fund in perpetuity, while the remaining one-half of the income from the Porter-Genau Memorial Fund is to be distributed annually among nine enumerated charities. The charities are contingent on the receipt of income as no part of the corpus can be expended for charitable purposes. Thus it is to be observed that the financial provisions of the Porter-Genau Memorial Fund and the several charitable bequests become dependent on each other; the source of financial existence and income for the two funds are inextricably interwoven; there is such a co-mingling of the two funds as to render them inseparable; if the *cy pres* doctrine is applied the two funds remain indivisible. The illegality of the Porter-Genau Memorial Fund takes with it and renders void the several bequests in paragraph 19 for charity.

Section 87.01, Fla. Stats. 1941 (F.S.A.), grants to the circuit courts of Florida the power to make and enter applicable declaratory decrees, orders or judgments upon the filing of a bill of complaint or other appropriate pleadings. The decrees so entered may be affirmative or negative in form and effect. Section 87.02 (F.S.A.) confers on the Circuit Courts of Florida the power to construe or interpret practically all instruments in writing. Section 87.04 (F.S.A.) authorizes executors and trustees, or any person interested in an estate, to obtain a declaration of right by the Circuit Courts of Florida involving trusts and estates and the Courts shall "determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings." Pursuant to these statutes, Gardner Ives Porter, Mrs. Joseph McMeekin and Mrs. Frank Bradford were made defendants by the executor and trustee in which they sought many directions of the court below as to their duties under the Ann Porter Will. The prayer of the bill of complaint requested the Circuit Court to decree that paragraph 19 of the Ann Porter will be declared a valid charitable trust and the

income therefrom subjected to the payment of the debts and costs of administration of the estate, or that the *cy pres* construction be made applicable or controlling.

Gardner Ives Porter, Mrs. Joseph McMeekin and Mrs. Frank Bradford, in paragraph 11 of their joint and several answer to the bill of complaint, set out that paragraph 19 of the Ann Porter will was illegal and void and conveyed no property rights or interest because it offended the common law rule against perpetuities and adjudications of the Florida courts. Mrs. Bertha Pauline Genau, likewise a defendant in the suit seeking a construction of the will by cross assignment, here contends that Porter, McMeekin and Bradford have forfeited their respective interests because they have contested the Ann Porter will prohibited by paragraph 23 thereof, viz:

"I further direct in the event anyone should contest this will, then and in that event such contesting party shall be cut out from any share whatsoever in my estate, and the share of such contesting party shall become a part of my residuary estate and such person shall be excluded from taking any part in such residuary estate and the same shall be divided among the other persons entitled to take such residuary estate."

This Chancellor below in ruling on this contention, made observations and findings and set them out in the final decree and are viz:

"The defendants, Porter, Bradford and McMeekin, on the other hand, point out that they did not institute this litigation, that they were brought into court as defendants, that they have never contested the probate of the will, but have only questioned the validity of certain of its provisions, and that their argument against the validity of the trust has assisted this court in making its ruling on that question. These facts are also true."

If the forfeiture clause of the will is sustained on the theory that Porter, McMeekin and Bradford filed an answer to the bill of complaint and in the answer they expressed views different from the other parties to the suit as to the legal construction paragraph 19 of the will should receive, then

their forfeited interests under the will pass to Bertha Pauline Genau. She emphasizes her contentions in her cross assignment of errors and the brief of her counsel, and his oral argument heard at the bar of this court was in support of this single contention. The Chancellor recites in the final decree that the views expressed by Porter, McMeekin and Bradford have been helpful to him in passing on the questions presented. They have never contended that the will was void or invalid but that paragraph 19 only violated the rule against perpetuities.

Thus is presented for adjudication the question: Are the acts and doings of Porter, McMeekin and Bradford, as reflected by the record in this controversy, legally sufficient to work a forfeiture of their respective interests under the Ann Porter will within the meaning of paragraph 23. thereof *supra?* It must be observed that these parties are defendants to a suit brought against them by the executor and trustee under the provisions of Sections 87.01, *et seq., Fla. Stats. 1941* (F.S.A.). Their pleadings filed in response to the bill of complaint are authorized by the above statutes. In these pleadings they asked the court for a construction of paragraph 19 of the Ann Porter will different from the other parties to the cause. They do not contend that the will is void *ab initio,* but simply point out the common law rule against perpetuties in force in Florida and our adjudications on this point.

The general authorities applicable to this point are in conflict and therefore irreconcilable. The latest text books and general trend of holdings by courts of other jurisdictions are that conditions in a will "prohibiting a contest" are void on the ground of public policy. Simes on Law of Future interest, Vol. 2, p. 552, par. 609. The filing of a bill of complaint seeking a construction of a will by the courts is not a contest of the will nor does the filing of a caveat violate such a condition. Where the contest of a will is made in good faith and for probable cause it is not a contest—the theory of such a conclusion being that the testator could not have intended to prevent a beneficiary from having his doubtful rights judicially determined. Thompson on Construction of Wills, pp. 676-8, par. 533.

Courts cannot know whether a will good on its face was made in conformity to statutory requirements or contra to the decisions of the State where executed until all the material facts are placed before the Court. If beneficiaries are forced to remain silent, under penalty of forfeiture, the courts will be prevented by the very commands of the testator from ascertaining the truth—thus the devolution of property will be had in a manner contrary to law. Schouler on Wills, Executors and Administrators, Vol. 2 (6th Ed.) pp. 1497-9, par. 1344. We have reached the conclusion in the case at bar that paragraph 19 offends the rule against perpetuities and our previous adjudications. This point was raised in the answer. If the point had not been raised because of the forfeiture clause, *supra,* the truth would have been suppressed, thereby impeding the true course of justice. Redfearn on Wills & Administration of Estates, pp. 579-80. It is our conclusion that the record in this controversy fails to establish a contest of the Ann Porter will on the part of Porter, McMeekin and Bradford so as to effect a forfeiture of their respective interests within the inhibitions of paragraph 23 thereof. The cross assignment of error is without merit.

The final decree appealed from is hereby reversed, with directions for further proceedings in the court below not inconsistent with the views herein expressed.

It is so ordered.

BROWN, THOMAS, ADAMS and SEBRING, JJ., concur.

BUFORD, J., concurs in part and dissents in part.

TERRELL, J., dissents.

BUFORD, J., dissenting in part and concurring in part:

I concur in what is said in the opinion in this case prepared by Mr. Chief Justice CHAPMAN and in the conclusion reached, except as in regards the determination of the question of forfeiture by Gardner Ives Porter, Mrs. Joseph McMeekin and Mrs. Frank Bradford.

Paragraph 19 of the will devised certain property to a Trustee as set forth in the CHAPMAN opinion.

The answer of Porter, McMeekin and Bradford in paragraphs 12 and 19 thereof alleged:

"12. These defendants, answering paragraph 12 of the bill of complaint, deny that paragraph 19 of the will of Ann Porter, deceased, creates a trust estate by reason of said paragraph 19 being vague, uncertain and indefinite, and further, that said provision is contrary to law, in that it violates the common law in effect in Florida, against creating an estate greater than lives in being and twenty-one years. These defendants specifically further deny the allegations of this paragraph to the effect that the trust attempted to be set up in said paragraph 19 is a valid charitable trust, and specifically deny that the income from said trust should fall under the rule of cy pres construction and be distributed to charity, but on the other hand allege, say and contend that the property and assets of said estate set out under this paragraph should be distributed to your answering defendants, together with the defendant Bertha Pauline Genau, share and share alike, as residuary legatees under paragraph 24 of said last will and testament."

"19. These answering defendants deny the matters and allegations and implications contained in paragraph 19 of the bill of complaint, and reiterate their claim that the trust attempted to be set up by paragraph 19 of the will of Ann Porter, deceased, is totally void as violating the law against perpetuities, and as being vague, indefinite and uncertain; that your answering defendants, together with Bertha Pauline Genau, are the sole beneficiaries of the property and assets set out in paragraph 19 of the said last will and testament."

The will contained the following:

"Fourth. I give, devise and bequeath to Gardner Ives Porter who is in the U. S. Forestry Service and located at Missoula, Montana, and his two sisters, Mrs. Frank Bradford, of Winchester, Ohio, and Mrs. Joseph McMeekin of Hartman Farm, Lochbourne, Ohio, (children of my husband, Edward Jarvis Porter), share and share alike, the following property located at No. 2636, 4th Ave. North, otherwise described as Lot five (5) Block 8, Hall's Central Avenue Subdivision No. 1; also property at 2926, 2nd Avenue North, described as Four (4) Block 17, Hall's Subdivision No. 2, Also the property at No. 1527 5th Street North, and the adjoining lot described as

North and South one-half of Lots 10 and 11, Block 6, and Hamlett's Revised Crescent Lake Subdivision as recorded in Plat Book 7, page 21, Public records of Pinellas County, Florida. Also the property known as the beach property, otherwise described as Lot 10, Block 3, Lone Palm Subdivision. . . .

"Fifth. I also give, devise and bequeath to Gardner Ives Porter, who is in the U. S. Forestry Service and located at Missoula, Montana, and his two sisters Mrs. Frank Bradford of Winchester, Ohio, and Mrs. Joseph McMeekin of Hartman Farm, Lochborne, Ohio, children of my husband Edward Jarvis Porter, Lots 5, 6, 7, and 33, District Florida Corporation Subdivision and Lots 12 and 13 of Block 6, Snell and Hamlett's Revised Crescent Lake Subdivision, as same appears of record in Plat Book 7, page 21, of Pinellas County Records."

"All the rest and residue of my estate, of every kind and description, whether real, personal or mixed, wherever located, I give, devise and bequeath to Bertha Pauline Genau, Gardner Ives Porer, Mrs. Frank Bradford and Mrs. Joseph McMeekin, share and share alike."

And it also contained the following:

"I further direct in the event anyone should contest this will, then and in that event such contesting party shall be cut out from any share whatsoever in my estate, and the share of such contesting party shall become a part of my residuary estate and such person shall be excluded from taking any part in such residuary estate and the same shall be divided among the other persons entitled to take such residuary estate."

In Roe Wells, Jr., et al. v. Olga Menn, et al., opinion filed July 26, 1946, not yet published, we said:

"Read in full, it would be difficult to write a noncontest clause that more completely shuts out a contesting legatee. The rule is that such clauses will not be enforced against a legatee who files a bill for the construction of a will or who contests it in good faith for probable cause, unless there is a limitation of the estate over to another person. If there is such a limitation, the contesting legatee is penalized by the loss of his legacy, unless resort to the courts was for the purpose of settling doubtful rights under the will or to de-

termine how far his interest might be affected by it and not for the purpose of destroying the will or any of its provisions. In re Brush's estate, 154 Misc. 480, 277 N.Y.S. 559."

In the cause now before us there is a limitation of the estate over to another party because the 23rd paragraph of the will specifically provides: "and the share of such contesting party shall become a part of my residuary estate and such person shall be excluded from taking any part in such residuary estate and the same shall be divided among the other persons entitled to take such residuary estate."

These answering defendants did contest the validity of paragraph 19 of the will with the result that they will be enriched by their action to an extent not desired or directed by the donor and contrary to the expressed wishes of the donor.

In Schouler on Wills, Executors and Administrators, 6th Ed., Vol. 2, page 1499, Sec. 1344, it is said:

"If one has used the machinery of the law by competent methods and designed to overthrow the expressed wishes of the testator this amounts to a contest, and the fact that the contest is waived before the actual judicial determination is not conclusive as such action may and is intended to induce a compromise overthrowing the expressed wish of the testator. So an attack upon the validity of a material part of a will is a contest."

See also same authority page 1501, Sec. 1346.

Mr. Redfearn in his Wills and Administration of Estates in Florida, 2nd Ed., page 301, Sec. 180 says:

"After a testator has made his will, he naturally desires it to take effect after his death according to his intentions expressed therein. In order to guard his will against attack, occasionally a testator includes a contest clause in his will which provides that in the event any legatee or devisee should attack the validity of the will, the legacy or devise given to such contestant is to become void. Such a non-contest clause is usually referred to as a condition in terrorem. Such conditions are recognized and favored in some jurisdictions. In other jurisdictions such conditions are not enforced unless there is a gift over to another person in the event of such contest. While such non-contest clauses are recognized and may be

enforced, a legatee or devisee should not be penalized by the mere filing of a bill for the construction of a will or by filing a caveat, where the contest is made in good faith and for probable cause. However, if there is a limitation of the estate over to another person, the first taker is penalized by the loss of his interest in the legacy or devise when he contests a will which contains a non-contest clause, unless his resort to the courts was for the purpose of ascertaining doubtful rights under the will or the extent to which his interest might be affected by it and not for the purpose of destroying the will or any of its provisions."

See also In Re: Bush's Estate, 154 Misc. 480, 277 N. Y. Supplement 559, also 17 C.J.S. 177.

The Supreme Court of the United States, speaking through Mr. Justice Brewer in Smithsonian Institution v. Meech, et al., 169 U. S. Sup. Court Report 398, 42 L. Ed. 793, said:

"In McElfresh v. Schley, 2 Gill. 181, 200 (41 Am. Dec. 415) the court said: 'It is only carrying out a plain intent of the testator and giving to the residuary devisee that which the testator intended, and forbidding the heir from taking property not designed for him. From the earliest case on the subject the rule is, that a man shall not take a benefit under a will, and at the same time defeat the provisions of the instrument. If he claims an interest under an instrument, he must give full effect to it, so far as he is able to do so. He cannot take what is devised to him and, at the same time, what is devised to another, although but for the will, it would be his; hence he is driven to this election to say which he will take.' See also 1 Jarman, Wells, 415; 2 Story Equi. Jur. No. 1076.

"The propositions thus laid down fully commend themselves to our approval. They are good law and good morals. Experience has shown that often after the death of a testator unexpected difficulties arise, technical rules of law are found to have been trespassed upon; contests are commenced wherein not infrequently are brought to light matters of private life that ought never to be made public, and in respect to which the voice of the testator cannot be heard either in

explanation or denial, and as a result the manifest intention of the testator is thwarted. It is not strange, in view of this, that testators have desired to secure compliance with their dispositions of property and have sought to incorporate provisions which should operate most powerfully to accomplish that result. And when a testator declares in his will that his several bequests are made upon the condition that the legatees acquiesce in the provisions of his will, the courts wisely hold that no legatee shall without compliance with that condition receive his bounty, or be put in a position to use it in the effort to thwart his expressed purposes."

All the language used by the testatrix in this regard shows that she intended the non-contest clause in the will to apply to any attack on any bequest made in the will and we find no escape from the conclusion that Porter, McMeekin and Bradford did just exactly what the testatrix provided in the will should work a forfeiture of their respective legacies under the will and cause those respective legacies to be vested in the remaining residuary legatee Bertha Pauline Genau under the express terms of paragraph 23 of the will.

See Sec. 17 C.J.S. 177; Moran v. Moran, 144 Iowa 451-122 N.W. 202; Donegan v. Wade, 70 Ala. 501. In re: Hill, 155 Cal. 437, 101 Pac. 443.

We have no trouble in distinguishing the conduct of the answering defendants in this case from the conduct of answering defendants in the case of Federal Trust Co. v. Ost. 120 N.J.E. 43, 183 Ala. 830. Because of this difference in conditions we reach a difference in construction just as the New Jersey Court in that case pointed out that it had reached a different conclusion from that reached by the Connecticut Court in South Norwalk Trust Co. v. St. John et al., 92 Conn. 168, 101 At. 961.

So it appears that if ever a forfeiture clause in a will is to be given effect this is a case in which it should be so treated and applied with the result that the decree should be amended and modified so as to adjudicate that each and every of the bequests made to Gardner Ives Porter, Mrs. Joseph McMeekin and Mrs. Frank Bradford are by them respectively forfeited

.and that all property described or included in such bequests shall go into and constitute a part of the residuary estate and shall be vested under the terms of the will in Bertha Pauline Genau.

