318 So.2d 231 (1975)
In re ESTATE OF Emma JONES, Deceased.
No. 74-55.
District Court of Appeal of Florida, Second District.
July 25, 1975.
Rehearing Denied September 11, 1975.
W. Langston Holland of Holland & Holland, St. Petersburg, for appellant.
Richard T. Earle, Jr. of Earle, Earle & Bryson, St. Petersburg, for appellees.
*232 BOARDMAN, Acting Chief Judge.
The primary issue in this case is the construction of certain provisions of the last will and testament of Emma Jones, hereinafter referred to as decedent.
The decedent devised the residue of her estate to co-trustees John A. Rhoades, Jr. and The First Gulf Beach Bank and Trust Company.
The pertinent part of the will provides:
SEVENTH
All the rest, residue and remainder of my estate, whether real property, personal property or mixed and wheresoever situated, of which I may die seized or possessed, or which I may own or have any interest in at the time of my death, I give, devise and bequeath to the FIRST GULF BEACH BANK AND TRUST COMPANY, a Florida banking corporation, and JOHN A. RHOADES, JR., as Co-Trustees, IN TRUST, for the uses and purposes as hereinafter set forth. I direct that my Co-Trustees shall collect the income received from the assets comprising the Trust Estate, and shall invest and re-invest the assets comprising the Trust Estate from time to time as may be required or allowed hereunder or by law. My Co-Trustees shall distribute the income from this Trust and certain amounts of the assets in the Trust Estate as hereinafter set out on at least an annual basis.
My Co-Trustee, THE FIRST GULF BEACH BANK AND TRUST COMPANY, shall physically hold and collect the monies comprising my Trust Estate. My Co-Trustee, JOHN A. RHOADES, JR., shall select the beneficiaries to receive the monies or properties from my Trust Estate in his sole and absolute discretion according to the standards or guidelines set out hereafter.
It is my desire that my Co-Trustee, JOHN A. RHOADES, JR., shall consider my wishes as I have verbally expressed them to him during my lifetime. It is my further wish that my Co-Trustee, (sic) JOHN A. RHOADES, JR., shall consider the needs of the Most Worshipful Grand Lodge, F. & A.M. of the State of Florida, for the use and benefit of their building fund in providing additional facilities for, first, crippled children, and second, a home for the aged. My wishes in this regard are further within the knowledge of my co-Trustee and Attorney, JOHN A. RHOADES, JR.
It is my intention and direction that my co-Trustee, JOHN A. RHOADES, JR., in selecting the beneficiaries hereunder shall in all events require that at least three-fourths (3/4ths) of the monies distributed hereunder, but can be more, shall be received by beneficiaries who qualify for charitable deduction purposes pursuant to the Internal Revenue Code.
It is my further intention that the beneficiaries have Masonic purposes, medical purposes, educational purposes, civic purposes, public purposes or any other non-profit type of activities.
I direct that my Co-Trustees shall disburse at least annually all the net income received from my Trust Estate, and, in addition, shall disburse at least annually four percent (4%) of the original assets of the Trust Estate together with corpus additions thereto as may be received from time to time, in order that this Trust shall terminate as a result of all assets having been disbursed not later than twenty-five (25) years from the date this Trust shall be duly qualified before a court of competent jurisdiction.
My Co-Trustees shall have all powers conferred upon trustees under the Uniform Trust Administration Law of the State of Florida as now enacted or as may be amended from time to time. I give and grant unto my Co-Trustees, full power of sale without the necessity of *233 Court order and request that no bond be required of my Co-Trustees for the faithful performance of their duties.
In the event that my co-Trustee, JOHN A. RHOADES, JR., shall at any time be unable to act as called for under this Trust, then and in that event, THE FIRST GULF BEACH BANK AND TRUST COMPANY shall become the sole Trustee and exercise all powers and responsibilities as may be required in administering the Trust Estate under the Trust created by me in this Will.
EIGHTH
I hereby acknowledge that in my Last Will and Testament, dated September 29, 1965, which was substantially the same as this Will, that my residuary estate was left to three (3) charitable organizations in equal shares, to-wit:
SALVATION ARMY OF ST. PETERSBURG, St. Petersburg, Florida; AMERICAN LEGION HOSPITAL FOR CRIPPLED CHILDREN, St. Petersburg, Florida; and MOUND PARK HOSPITAL FOUNDATION, INC., St. Petersburg, Florida, for cancer research.
I acknowledge and recognize the Florida law relative to charitable beneficiaries and the six (6) months' provision of said law relative to gifts or devises to charitable beneficiaries, and state that my overall testamentary plan has not changed from my previous Will, but only the selection of the beneficiaries.
The decedent died on March 8, 1973. An order was entered admitting the will to probate on March 9, 1973.
Mrs. Charles R. Pinkston, a/k/a Peggy Ann Pinkston, appellant, the legally adopted daughter and sole heir at law of the decedent, filed her petition for partial revocation of probate of will and construction of will. The petition alleged, inter alia, that the dispositive provision of the will to the co-trustee John A. Rhoades, Jr. was invalid in that such devise was violative of the rule against perpetuity and that the designation of the class of beneficiaries to receive distribution from the proposed testamentary trust was so uncertain as to be unenforceable. Appellees, the co-trustees, filed their answer thereto denying the essential allegations of said petition.
The trial court concluded that paragraph "EIGHTH," supra, read in pari materia with paragraph "SEVENTH" revealed an overall charitable intent coupled with the proviso that three-fourths (3/4) of the beneficiaries must qualify for charitable deduction purposes pursuant to the Internal Revenue Code. Accordingly, the trial court entered an order finding that article "SEVENTH" creates a good and valid trust for charitable distributions only. The appellant's petition was denied. From this order the appellant filed this timely appeal.
The main contention of the appellant is that the trust created by the will of decedent is not a charitable trust and that it violates the rule against perpetuities.
On the other hand, the contention of the appellees is that the trust under the will is a charitable trust and that being such the rule against perpetuities is not applicable.
As a general rule, and the parties are in accord, gifts to charities are not subject to the rule against perpetuities. Gray, The Rule Against Perpetuities, (4th Ed. 1942), § 589. The trust under consideration does not come within any of the exceptions to the rule, supra, and it follows it is valid if in fact it is a charitable trust. If, however, the trust is not a charitable one, it must fail as a gift in gross or in excess of twenty-one (21) years of duration. Gray, supra, § 629. As was held In Re Estate of Gold, Fla.App.3rd, 1966, 189 So.2d 905, charitable gifts are liberally construed and upheld if reasonably susceptible of a construction which gives them validity. It is too well settled to cite authorities that the primary and cardinal rule of will *234 construction is that the intent of the testator governs and is to be given full force and effect whenever possible. Consequently, a charitable intent on the part of the testator must be evident. Our supreme court in the case of Porter v. Baynard, 158 Fla. 294, 303, 28 So.2d 890 (1946), cert. den. Union Trust Co. v. Genau, 330 U.S. 844, 67 S.Ct. 1085, 91 L.Ed. 1289, said:
... [I]n order that a gift shall possess such certainty as will give it validity, the language must require that the fund shall be expended for charity and for nothing else... . (citations omitted; 28 So.2d 890, 895).
Counsel for the respective parties urge that the trust is either completely valid or totally void. We agree with this conclusion under the circumstances of this case.
Appellant argues that by placing distribution of the trust's assets in the hands of the trustee and limiting his discretion only to the extent that three-fourths (3/4) of the proceeds must go to I.R.S. qualified charities, the trust violates the common law rule against perpetuities and must fail. The appellee argues that the provisions of article "EIGHTH" breathes life into article "SEVENTH" and demonstrates an overall charitable intention.
Our conclusion is that under the language used article "EIGHTH" cannot serve to resuscitate article "SEVENTH." The decedent's statement in article "EIGHTH"
... that [her] overall testamentary plan has not changed ... but only the selection of the beneficiaries
is not supported by a reading of article "SEVENTH."
The conclusion being reached that the creation of the trust in perpetuity violates the common law rule against perpetuities, and our former adjudication, then a very cogent question arises on the record, viz., what is the legal effect of the invalid provision.
The law of this state is clear and whether the intended trust fails altogether depends upon whether the provision which failed can be separated from the other provisions without defeating the purpose of the settlor in creating the trust. Porter v. Baynard, supra; Restatement of the Law, Second, Trusts, § 65 (1959).
In light of the record, briefs and argument, and upon our review of the applicable principles of law, we are of the view that notwithstanding the fact that three-fourths (3/4) of the trust is dedicated to benefit charity and can be distributed according to the expressed intention of the decedent, the provision that this percent of the bequest is to be distributed to "... beneficiaries who qualify for charitable deduction purposes pursuant to the Internal Revenue Code" is not sufficient to designate recipients who qualify under the charity exception to the rule against perpetuities. The stated beneficiaries might well include any number of organizations which are undoubtedly worthy, but are not "charities" within the meaning of the exception. Since no part of the bequest may therefore be saved, we are compelled to conclude that it must all fall to the rule, supra, and pass instead by intestacy.
Reversed.
SCHWARTZ, ALAN R., Associate Judge, concurs specially with opinion.
GRIMES, J., concurs in part and dissents in part with opinion.
GRIMES, Judge (concurring in part, dissenting in part):
A valid charitable trust does not violate the rule against perpetuities. Brown v. Saake, Fla.App.2d, 1966, 190 So.2d 56. Moreover, a testator may leave to his trustees the responsibility of selecting the charitable purposes to which the trust *235 funds shall be devoted. IV Scott on Trusts, § 396.
The difficulty arises in this case because the testator did not use language which precisely limited the disposition of the trust to charitable purposes.
This problem is considered in depth in § 398 of the Restatement of Trusts 2d which states:
"(1) Where by the terms of the trust the trustee is directed to apply the trust property to purposes which are not limited to charitable purposes but include noncharitable purposes for which a trust or power cannot validly be created, the intended trust fails altogether, except as stated in Subsections (2), (3) and (4).
(2) If the settlor manifested an intention that the whole of the trust property should be applied to charitable objects unless the trustee should choose to apply a part of it to non-charitable objects for which a trust or power cannot validly be created, and his primary purpose was to apply it to the charitable objects, the power to apply the property to the other objects is invalid, and there is a valid charitable trust of the whole of the property.
(3) If it was not the primary purpose of the settlor to apply the property to charitable objects, but the maximum amount which would be required for the accomplishment of the non-charitable objects can be ascertained, the trust fails only as to the amount so required, and the charitable trust of the balance is valid.
* * * * * *"
The comments on subsections (2) and (3) are also revealing:
"Comment on Subsection (2):
g. Where the charitable purpose is primary. Where by the terms of the trust the trustee is directed to apply the trust property to charitable purposes, but he is authorized to apply part of the property to a non-charitable object for which a trust or power cannot validly be created, a valid charitable trust of the whole of the property is created. In such a case the testator's primary purpose is to apply the property to charitable purposes, and since the power to apply part of the property to the other objects is invalid, the trustee is under a duty to apply the whole of the property to the intended charitable purpose.
Thus, where a testator bequeaths property in trust to use the income for charitable purposes, and adds a provision that the trustee for the time being may in his discretion apply part of the income to the perpetual maintenance of the testator's grave, the trustee in the absence of a statute otherwise providing cannot properly apply any part of the income for the maintenance of the grave, but there is a valid charitable trust of the whole of the property.
Comment on Subsection (3):
h. Where amount required for invalid objects is ascertainable. Where by the terms of the trust the trustee is directed to apply the trust property to several objects, and some of these objects are charitable but the others are non-charitable objects for which a trust or power cannot validly be created, and the maximum amount which would be required for the accomplishment of the non-charitable objects can be ascertained, the charitable trusts will be valid to the extent of the balance of the property, even though the primary purpose of the testator was to apply the property to the invalid non-charitable objects. If his primary purpose was to apply the property to the charitable objects, there is a valid trust of the whole of the property (see Subsection (2)); and if neither purpose was primary, the property will be equally divided among the several objects and *236 the intended trust will be upheld as to the shares to be applied to the charitable purposes under the circumstances stated in Subsection (4).
Thus, if a testator bequeaths a large sum of money in trust to apply a part of the income in keeping the testator's grave in repair, and to apply the balance of the income for charitable purposes and the intended trust for the repair of the grave is invalid as a perpetuity (see § 124), the court will determine the sum necessary to yield an income sufficient to care for the grave, and the trust as to so much of the principal sum will be held invalid, but the charitable trust of the balance will be upheld."
At first blush, the trust established by Emma Jones appears to be of the type discussed in subsection (2), because it is obvious from a reading of the seventh and eighth articles of the will that she had charitable purposes primarily in mind. Yet, nowhere in the will is found a provision specifically limiting the trust to charitable purposes. The paragraph which comes the closest reads as follows:
"It is my further intention that the beneficiaries have Masonic purposes, medical purposes, educational purposes, civic purposes, public purposes or any other non-profit type of activities."
While a charitable activity could be expected to be a non-profit activity, there are many non-profit activities which could not, by any stretch of the imagination, fall within the definition of charitable activities. Since the enumerated purposes are listed in the disjunctive, it follows that under this provision, the application of the trust funds is not limited to charitable purposes.[1]
However, I cannot agree that the entire trust must fail. There is an additional paragraph in the seventh article of the will which reads:
"It is my intention and direction that my co-Trustee, JOHN A. RHOADES, JR., in selecting the beneficiaries hereunder shall in all events require that at least three-fourths (3/4ths) of the monies distributed hereunder, but can be more, shall be received by beneficiaries who qualify for charitable deduction purposes pursuant to the Internal Revenue Code."
I am persuaded that by virtue of the inclusion of this paragraph, the trust falls within the provisions of subsection (3) of § 398.
*237 There are many definitions of charity, but most of them are broad. IV Scott on Trusts, § 368 says:
"§ 368. What purposes are charitable. It is impossible to enumerate all the purposes which have been held by the courts to be charitable purposes or which may hereafter be held to be charitable purposes. Certain purposes are clearly charitable. These include the relief of poverty, the promotion of education, the advancement of religion. So too, it is well settled that the promotion of health is a charitable purpose. So are governmental or municipal purposes, such as the erection of bridges, and the like. In addition to these purposes there must be added a more general and indefinite category, a general catchall, to include the vast number of miscellaneous purposes which are properly held to be charitable. Perhaps these can best be included under the heading of other purposes the accomplishment of which is beneficial to the community. This category is, indeed, broad enough to cover all charitable purposes, including those more specifically enumerated above... ."
Moreover, the definition of charity is subject to change. As stated in Porter v. Baynard, 1946, 158 Fla. 294, 28 So.2d 890:
"... The courts should be left free to apply the standards of the time  on the theory that what may be charitable in one generation may be non-charitable in a later age, and vice versa. Ideas regarding social benefits and public good change from century to century and vary in different communities. It must expand with the advancement of civilization and the daily increased needs of man. Bogert on Trusts and Trustees, Vol. 2, 3368, p. 1129."
§ 170(c) of the Internal Revenue Code represents the fruits of an effort to draft a reasonable definition of what could be considered a charitable contribution in today's society. In Mitchell v. Reeves, 1938, 123 Conn. 549, 196 A. 785, the testator left the residue of her estate to organizations "devoted exclusively to religious, charitable, scientific, literary, historical or educational purposes, including the encouragement of art and which under the federal and state succession, transfer and inheritance tax laws at the time of my death or the time they are assessed are exempt from taxation." In construing this will the court said:
"... The inclusion in the description of the corporations, organizations, or trusts to which the income might be distributed under the will of the requirement that they shall be `exempt' from federal and state transfer and inheritance taxes establishes beyond question the intent of the testatrix that only such corporations, organizations, or trusts as are exclusively devoted to charitable uses are entitled to receive the income. To give effect to that intent we so construe the terms of the will before us."
By having specified that the beneficiaries of at least three-fourths of the trust be parties who qualify for charitable deduction purposes pursuant to the Internal Revenue Code, I believe the testator adequately circumscribed that portion of the trust for charitable purposes. Therefore, only one-fourth of the trust should fail.
This conclusion is supported by IV Scott on Trusts, § 398.2(3) in which it is said:
"... It has been held in a number of cases that where property is bequeathed in trust for charitable purposes and other purposes which fail, and it is possible to ascertain the maximum amount which could properly be applied for the other purposes if they were valid purposes, the trust fails as to that amount, but the balance of the property is applicable to the charitable purposes... ."
For reasons which I suspect to have been tactical, both sides indicated that they felt that the trust was either fully valid or fully invalid. As authority for that position, *238 reference was made to Porter v. Baynard, supra, in which the court struck down a trust fund as violating the rule against perpetuities. I believe the parties have misconstrued the application of this case. There, the trust was established in perpetuity with a provision that one-half of the annual net income should be reinvested in the trust and that donations to certain specified charities should be made from the other half of the net income. The court held that because half of the income was reinvested in the trust, the trust could not be considered a charitable trust. The court then stated:
"The conclusions having been reached that the creation of the Porter-Genau Memorial Fund in perpetuity violates the common law rule against perpetuities and our former adjudications, then a pertinent question arising on the record is viz, what is the legal effect of the invalid provision of paragraph 19 on the charitable provision of the same paragraph, and arguendo, conceding that the charity provision is public in character. Bogert on Trusts and Trustees, Vol. 1, § 217, pp. 669, 670, states the rule thusly:
`The accumulation trust is generally connected with another trust or a gift of succeeding interest. Wherever possible, the courts will separate out the other valid gift and support it. The void accumulation provision will cause the invalidation of another trust or gift only when the two are intimately connected, and to leave the other gift standing without the accumulation trust would be to violate the intent of the settlor and frustrate his broad general purpose. Occasionally, a valid accumulation provision may be so linked with a later void gift as to fall with it.'
41 Am.Jur. 100, 101, par. 57, states the rule viz: `When a part only of a gift is invalid by reason of the rule against perpetuities and the invalid limitation is an essential part of the general scheme of the will or gift, the several parts of the devise or the grant are treated as inseparable and the whole is adjudged void. Thus, if a part of the testator's general scheme or dominant intent is that an estate shall be kept entire for an unlawful period, no part of the scheme can be sustained, and the estate to which the void provisions relate vests immediately in the heir. * * * The test is whether the invalid parts are so interwoven with those which are valid that the former may not be eliminated without interfering with or changing in any essential the main testamentary scheme. This can usually be done when it is clear that the gifts which do not transgress the rule are so independent that it is manifest that the testator would have desired that they should stand if he had been aware of the invalidity of the rest, but if the valid and invalid gifts are so connected that the presumed wishes of the testator would be defeated if one portion was retained and other portions rejected, or if manifest injustice would result from such construction to the beneficiaries or some of them, then all the gifts must be construed together and all must be held illegal and must fall. * * *'"
Applying these principles to the case at hand, the court then said:
"... The charities are contingent on the receipt of income as no part of the corpus can be expended for charitable purposes. Thus it is to be observed that the financial provisions of the Porter-Genau Memorial Fund and the several charitable bequests become dependent on each other; the source of financial existence and income for the two funds are inextricably interwoven; there is such a co-mingling of the two funds as to render them inseparable; if the cy pres doctrine is applied the two funds remain indivisible. The illegality of the Porter-Genau Memorial Fund takes with it and *239 renders void the several bequests in paragraph 19 for charity."
The trust in the instant case is different. The source of financial existence and the income for the valid portion of the trust can be completely separated from the invalid portion. Three-fourths of the assets can be distributed according to the terms of the trust, and the other one-fourth would revert to the testator's estate.
The trust provisions of the will were inartfully drawn, and the trust cannot be upheld in its entirety. Yet, the will does reflect an unmistakable intent on the part of Emma Jones. She specifically included a provision disinheriting the adopted daughter who is now contesting her will, and she manifested a clear desire to leave her trust estate for charitable purposes. The charitable trust is a favorite of the law. 5 Page on Wills, § 41.7; 5 Fla.Jur., Charities, § 4. When Mrs. Jones said that at least three-fourths of her trust must be given to organizations who qualify for a charitable deduction, it does no violence to established rules of construction to hold that this constituted a mandate for that much of her trust property to be applied to charitable purposes. As construed by the majority of this court, I suggest that her intent is being frustrated.
I would affirm the judgment below to the extent of upholding three-fourths of the trust; I would reverse as to the balance.
SCHWARTZ, ALAN R., Associate Judge (specially concurring).
While I concur entirely both in the decision of the Court and in Judge Boardman's opinion, I believe that the views so well expressed by Judge Grimes call for a brief rejoinder. It may be assumed  the contentions of both parties to the contrary notwithstanding  that, as Judge Grimes states, a portion of the trust could be saved from the onslaught of the Rule against Perpetuities if that portion were properly designated for "charitable purposes" within the meaning of the exception to the Rule. I cannot agree, however, that the will's provision that three-quarters of the trust estate must be distributed to "... beneficiaries who qualify for charitable deduction purposes pursuant to the Internal Revenue Code ..." meets this requirement.
The contrary view, as expressed in the partial dissent, is necessarily based upon one or the other of these conclusions: (a) those entities presently designated in 26 U.S.C. § 170(c) as qualifying for a "charitable deduction" are in fact ones which involve "charitable purposes" under the law of trusts; or (b) the very meaning of "charitable purposes" is to be defined by the terms of that provision of the Internal Revenue Code; that, in other words, Congress, rather than the courts, is to determine the "modern" extent of the "charitable purpose" exception to the Rule. It seems to me that neither conclusion is sound.
It seems perfectly clear, first of all, that many of those organizations now specifically listed in § 170(c) would not, even under an expansive definition, qualify as having "charitable purposes" under the law. The prime example is contained in § 170(c)(3) which provides that veterans' organizations qualify for the deduction. But see In re Meyers, [1951], 1 All E.R. 538; In re Thomas's Will Trust, [1969], 3 All E.R. 1492. Thus, were the will before us to be upheld, even in part, the trust income could be employed for purposes which could not have been sustained had they been specifically spelled out in the instrument.
The fallacy in the other proposition  that something is a charity if a contribution *240 to it can be taken as a deduction on one's federal income tax return  lies, I think, in the fact that, as its very provisions conclusively demonstrate, § 170(c) does not represent the results of an effort by Congress to draft a modern definition of "charity," let alone to prescribe the modern boundaries of the "charitable purposes" exception to the Rule against Perpetuities. The provision is, instead, simply one of legislative largesse to a group of entities which have been designated, not in any objective terms of their purposes (however they may be labelled), but simply because, after and as a result of the legislative process about which we all know, Congress desired to confer this benefit upon them. I cannot agree that it would be wise to permit the law of trusts to be written in this manner.
NOTES
[1] Comment d of § 398 of the Restatement of Trusts 2d states in part:

"d. Same  Conjunctive and disjunctive provisions. Where by the terms of the trust the property is to be applied to purposes having certain characteristics, some of which are charitable and some of which are not, it is a question of construction whether the property can properly be applied only to purposes which have all of the enumerated characteristics, so that the application is restricted to purposes which must be charitable regardless of what other characteristics they are required to have; or whether the property can properly be applied to purposes which have any one or more of the enumerated characteristics but not necessarily those which are charitable. Whether the characteristics are enumerated in the conjunctive or in the disjunctive is a factor to be considered in the interpretation of the instrument. If the enumerated characteristics are stated conjunctively, it is easier to interpret the instrument as meaning that the property is to be applied only to purposes which have all of the enumerated characteristics than it is if they are stated disjunctively.
* * * * *
On the other hand, if the direction were to apply the property `for charitable or useful purposes,' this would ordinarily be interpreted as though it read `for purposes which are both charitable and useful or either.' If so, the application of the property is not restricted to purposes which, being useful, must nevertheless be charitable. It could therefore be applied to purposes which, although useful, are not charitable. In such case, since application may be made to purposes which are not charitable, regardless of what other characteristics they are required to have, a valid charitable trust is not created as to any part of the property as to which the direction is made."