PER CURIAM.
The trustee of a testamentary trust and unnamed contingent beneficiaries appeal the trial court’s construction of two conflicting provisions of a testament trust contained in a will based upon parol evidence. We find no error in the trial court’s reliance upon parol evidence to ascertain the testator’s intent in an effort to resolve the conflict. Nor do we find error in the court’s construction of the general intent but in our view the court’s construction must be more narrowly limited to conform with the evidence adduced below. We therefore affirm as modified herein.
Rose Frumkin, the decedent, executed the subject will in 1988. She died on February 14, 1989. A provision of her will created a trust for the benefit of her son, Alfred Frum-kin, a paraplegic. Appellant First Union National Bank of Florida, N.A. (“First Union”) was named as the trustee. The trust was to be funded only with American Telephone and Telegraph Company (“AT & T”) stock or other telephone company stock acquired as a result of a divestiture.
Under Article IV paragraph (B) of the will, the trustee is authorized to “... pay to Alfred Frumkin such sum of principal of the trust as trustee deems necessary or advisable from time to time for Alfred Frum-kin’s health and medical needs ...” and directs the trustee in determining the need for such distributions to consider Alfred Frum-kin’s income and readily marketable assets. On the other hand, Article IV, paragraph D of the will directs the trustee not to “... sell or otherwise dispose of any such stock unless such action is required to provide funds to meet a medical emergency of Alfred Frum-kin.” A “medical emergency” is specifically defined in the will as “... an incident of occasion requiring medical attention ... that is life threatening.”
The trial court properly found that paragraphs B and D were in conflict as to the scope of allowable discretionary principal distributions from the trust and hence a patent ambiguity existed on this point. At the trial below, the trial court permitted, over First Union’s objection, extrinsic evidence from various witnesses including the drafter of Rose’s will as to Rose’s intent for her disabled son Alfred. It is a well established rule of will construction that the intent of the testator must govern and be given full force and effect to the extent possible and when it is not violative of the law or public policy. In re Estate of Tolin, 622 So.2d 988, 990 (Fla. 1993); Dutcher v. Estate of Dutcher, 437 So.2d 788, 789 (Fla. 2d DCA 1983); In re Estate of Jones, 318 So.2d 231, 233-34 (Fla. 2d DCA 1975). cert, denied, 334 So.2d 606 (Fla.1976); see also, § 732. 6005, Fla.Stat. Where the intent of the testator is clear and unambiguous from the terms of the testamentary document, a court may not consider extrinsic evidence on this issue. In re Estate of Lesher, 365 So.2d 815, 817 (Fla. 1st DCA 1979). Where as here, however, there is a patent ambiguity as to the testator’s intent, the court below was free to consider extrinsic evidence on the subject. In re Estate of Rice, 406 So.2d 469, 476 (Fla. 3d DCA 1981), rev. denied, 418 So.2d 1280 (Fla.1982).
Based upon the testimony of the attorney who prepared the will, the trial court concluded that principal distributions from the trust were not to be limited to life threatening emergencies:
... this Court finds that the testatrix intended to permit the Trustee to make discretionary principal distributions from the Alfred Frumkin Trust for the health and maintenance of Alfred Frumkin, which includes not only life threatening medical emergencies but also ordinary and necessary health care, and also includes lifestyle needs for “maintenance,” including housing and food.
Order Construing Testamentary Trust at p. 3.
Accordingly, the trial court authorized the trustee to make such distributions from the Trust to the extent that Alfred’s income and marketable assets were insufficient to provide for the same.
We find that the totality of the evidence below supports the trial court’s conclusion that principal distributions from the trust are not to be limited solely to “life threatening emergencies” for Alfred. However, our review of the evidence indicates that when *465 distributions are to be made for Alfred’s general maintenance and support (i.e. food, shelter, etc.), they are to be consistent with Alfred’s needs as a physically disabled person.
Affirmed as modified.